UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

NEWARK VICINAGE

| | |
|---|---|
| CLAYTON HOWARD, | Civil Docket No: 2:24-cv-07661-SDW-SDA |
| Plaintiff, | |
| vs. | CIVIL ACTION AMENDED COMPLAINT |
| STATE OF NEW JERSEY, ET. AL | |
| Defendant | |

1. This is a complaint for damages pursuant 42 U.S.C § 1983, 42 U.S.C. § 1985(2)(3), 42 U.S.C. § 1986 and violations to New Jersey Civil Rights Act. A Claim is brought against the Borough of Carteret and the Essex County Prosecutors office pursuant to Monell v Dept of Social Services for failure to train those responsible for the enforcement of Domestic Violence law within the Borough of Carteret and Essex County which resulted in harm imposed upon the plaintiff by both an domestic violence offender and named defendants herein.

## **PARTIES**

2. Clayton Howard, the plaintiff herein is a resident of MIDDLESEX COUNTY, in the State of New Jersey. Mr. Howard full address is to remain confidential to protect his safety.

3. The 1st  Defendant is The Essex County Prosecutors Office, a public body vested with the mandate to prosecute suspected criminal offenders within Essex County in the State of New Jersey whose address and contact details are as follows: **Physical Address:** 50 W Market Street, Newark New Jersey 07103 **Telephone Number:** (973) 621-4700 **Email Address:** Compliants@njecpo.org

4. The 2nd Defendant, Jenna Ventola is an official in the office of the 2nd Defendant engaged as a prosecutor and whose address and contact details are as follows**: Physical Address:** 50 W

CIVIL ACTION AMENDED COMPLAINT - 1

Market Street, Newark New Jersey 07103 **Telephone Number:** (973) 621-4635 **Email Address:** jenna.ventola@njecpo.org

5.  The 3th Defendant is "John Doe" being the prosecutor who was assigned to replace the 3rd Defendant Jenna Ventola on March 20, 2022, The Plaintiff has made numerous "Good Faith" attempts to receive information regarding who this prosecutor was as the listed victim within the prosecution of State of New Jersey v Francyna Evins but was denied despite being the listed victim in violation to New Jersey own statue concern the Rights of Crime Victims and Witness (N.J.S.A. 52:4B-36). The 5th Defendant is an official within the office of the 2nd Defendant and whose contact details are as follows: **Physical Address:** 50 W Market Street, Newark New Jersey 07103 **Telephone Number:** (973) 621-4700 **Email Address:** complaints@njecpo@org

6.  The 4th Defendant Francyna Evins is the ex-partner of the Plaintiff who was the listed defendant name in the state of New Jerseys prosecution: State of New Jersey v Francyna Evins and the listed defendant named in Domestic Violence final restraining order FV-07-3579-22 and whose address and contact details are as follow: **Physical Address:** 37 Tompkins Street, Staten Island New York 10304 **Telephone Number:** (347) 668- 1233 **Email Address:** francynaevins@icloud.com

7.  The 5th Defendant Cynthia Hardaway is the defense attorney assigned by the Essex County Superior Court to defend Francyna Evins in state prosecution State of New Jersey v Francyna Evins and whose address and contact details are as follows: **Physical Address:** 17 Washington Street, 1st Floor, Montclair New Jersey 07042 **Telephone Number:** (973)725-4300 **Email Address:** chardawayesq@verizon.net

8.  The 6th Defendant is the Carteret Police Department, located within the borough of Carteret in Middlesex County New Jersey. The Carteret Police Department is a public body responsible for the enforcement of state law on the county level and for maintaining public safety whose contact details are as follows: Physical Address: 230 Roosevelt Avenue, Carteret New Jersey 07008 Telephone Number: (732)541-4181 Email Address njag.electtronicservice.civilmatters@law.njoag.gov

CIVIL ACTION AMENDED COMPLAINT - 2

9. The 7th Defendant Officer Johnathan Defelice is an officer within the Carteret Police Department. The Carteret Police Department is a public body responsible for the enforcement of state law on the county level and for maintaining public safety whose contact details are as follows: **Physical Address:** 230 Roosevelt Avenue, Carteret New Jersey 07008 **Telephone Number:** (732)541-4181 **Email Address:** njag.electtronicservice.civilmatters@law.njoag.org

10. The 8th Defendant Officer Torbino is an officer within the Carteret Police Department. The Carteret Police Department is a public body responsible for the enforcement of state law on the county level and for maintaining public safety whose contact details are as follows: **Physical Address:** 230 Roosevelt Avenue, Carteret New Jersey 07008 **Telephone Number:** (732)541-4181 **Email Address:** njag.electtronicservice.civilmatters@law.njoag.gov.

11. The 9th Defendant Sergeant Jason Hanes is a Sergeant within the Carteret Police Department. The Carteret Police Department is a public body responsible for the enforcement of state law on the county level and for maintaining public safety whose contact details are as follows: **Physical Address:** 230 Roosevelt Avenue, Carteret New Jersey 07008 **Telephone Number:** (732)541-4181 **Email Address:** njag.electtronicservice.civilmatters@law.njoag.gov

12. The 10th Defendant is Patrick Wallmack of Middlesex County Municipal Prosecutors Office who is responsible for the prosecution offenses within the State of New Jersey on the municipal level and whose contact details are as follows: **Physical Address**: 25 Kirkpatrick Street, New Brunswick New Jersey 08901 **Telephone Number**: (732)745-5089 **Email Address:** njag.electtronicservice.civilmatters@law.njoag.gov

13. The 11th Defendant Judge Allen Cumba is a judge of the Carteret Municipal Court and is sued in his official capacity. Borough of Carteret is a municipal corporation organized under the laws of the State of New Jersey Borough of Carteret Municipal Court address is as follows: **Physical Address:** 230 Roosevelt Avenue, Carteret New Jersey 07008 **Telephone Number:** (732)541-3900 **Email Address:** njag.electtronicservice.civilmatters@law.njoag.gov

14. The 12th Defendant is Hon. Judge Chandra Colemen of Essex County Superior Court Special Remand who is responsible presiding over triable offenses within the State of New Jersey within Essex County

CIVIL ACTION AMENDED COMPLAINT - 3

and whose contact details are as follows: **Physical Address:** 50 West Market Street Floor 5 Newark, New Jersey 07102 **Telephone Number:** (973)-776-9630  **Email Address:** njag.electtronicservice.civilmatters@law.njoag.gov

## JURISDICTION

15. This Court matter was moved to this Court by motion of Defendants on July 10, 2024. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

16. In addition to the above below are some of relevant facts out of which the Plaintiff's complaint arises:

## STATEMENT OF FACTUAL INFORMATION

1. October 6, 2022 Francyna Evins amends the Essex County Temporary restraining order to include allegations that the Plaintiff had filed false reports with New Jersey DCYPP accusing her of child abuse.

2. On December 1, 2022, Final restraining order FV-07-3579-22 was entered in favor of the plaintiff ordering FRANCYNA EVINS to refrain from contact with the plaintiff and his infant child DIOR SMITH for the remainder of her life. Additionally Judge Jousha Sunders further imposed a 1000 ft stay away as the Judge felt the restraining order itself would not be enough to stop FRANCYNA EVINS from continuing her pursuit of the Plaintiff.

3. On December 5, 2022, FRANCYNA EVINS who was a resident of Staten Island New York took the dismissed allegation from Essex Family Court Family Part and filed criminal charges of false reporting against the plaintiff. In this report she claimed contact from the Plaintiff where allegedly the Plaintiff stated: "If I cannot have you then no one can". Without any

CIVIL ACTION AMENDED COMPLAINT - 4

Docusign Envelope ID: 9C0AACC8-8B2D-440D-BADС-73ACA07CE4DD

evidence of this and using connections within Staten Island, New York an investigative card was issued within forty-eight (48) hours ordering the detention of plaintiff for questioning.

4. December 8, 2022, FRANCYNA EVINS used the NYPD complaint filed December 5, 2022, to travel back into the State of New Jersey, the borough of Carteret within Middlesex County. FRANCYNA EVINS filed the same charges from New York City within the borough of Carteret at the local police station again alleging Harassment and false reports. The 6th defendant Francyna Evins reported these allegations to a Carteret PD Officer Defelice on 12/8/2022 which is recorded via the officer's body camera. In this footage, Francyna Evins states clearly that she traveled into Carteret from Staten Island, NY to file harassment and false reporting charges against the plaintiff despite having recently be issued a restraining order against her in favor of the plaintiff. Officer Defelice took this report and aided Francyna Evins in filing criminal municipal charges against the plaintiff despite knowing the 6th defendant had been found liable for harassment days before this complaint and not residing within the borough of Carteret but residing within Staten Island NY which PO Defelice states within the footage.

5. On January 10, 2023, the plaintiff received a call from attorney Amina James, ESQ requesting he dismiss both the recent final restraining order and the Essex County criminal charges in exchange FRANCYNA EVINS would dismiss the new charges she had filed against him attempting to intimidate the Plaintiff with the new litigation. This attorney stated clearly to the plaintiff that she did not represent Francyna Evins and was considering representing Francyna to mediate the matter between the plaintiff and Francyna Evins. The Plaintiff refused to dismiss the Essex County Final Restraining Order advising the attorney that Francyna Evins had maliciously pursued him for over a year obsessed with vengeance and further advised the attorney who was from NYC to contact the Essex County Prosecutors as the plaintiff believed Francyna Evins had not been truthful with the attorney. The attorney agreed to do so and ended the call asking to return contact with the plaintiff after she investigated the matter further.

6. On January 13, 2023, NYS Family Court Attorney Ian Berliner and Essex County Prosecutor Steven Postnik both contact attorney Amina James ordering her to refrain from contacting the plaintiff again. In Text message conversation the attorney Amina Jones admits to deception by

CIVIL ACTION AMENDED COMPLAINT - 5

FRANCYNA EVINS and advises the plaintiff to do what is necessary to deter FRANCYNA EVINS from future attempts at intimidating the plaintiff.

7. January 17, 2023, the Plaintiff reported to the Carteret Police regarding several issues reported within investigative report I-2023-002596. The first was the police department's refusal to document the named defendant of states restraining order FV-07-003579-22 Francyna Evins being outside the home of the plaintiff on December 8, 2022. Officer DeFelice responded and instructed the plaintiff that he needed to provide video to be "credible" to the police of Carteret despite being the "protected party" of a state restraining order.

8. The 2nd incident was the plaintiff being contacted by an attorney who was not the legal representative of Francyna Evins, Amina James. This attorney was a friend of Francyna Evins who contacted the plaintiff requesting he dismiss the active Essex County criminal charges against Francyna Evins or Francyna Evins would file complaints against him.

9. The plaintiff provided text messages between himself and Amina James where it was admitted that Francyna Evins had erroneously reported information to this attorney, so the attorney was then refusing to assist Francyna Evins in the matter in any capacity, the plaintiff was then advised to go the police.

10. Officer DeFelice erroneously and intentionally falsified the plaintiffs' statements to Judge Allen Cumba falsely stating that Amina James was the attorney for Francyna Evins when the text itself stated she had NEVER been. Officer DeFelice in his written report stated that the "Attorney Amina James contacted Clayton Howard and informed him she would not be representing Francyna Evins" which Officer Defelice intentionally falsely documented.

11. The Essex County Prosecutor Steven Posternik contacted Amina James and informed her she could not contact a witness and advised her as she was not the counsel for Francyna Evins she was forbidden to do so.

12. Ian Berlinger, the attorney for Clayton Howard also contacted Amina James who also informed him that she was not the attorney for Francyna Evins, but a friend trying to help her which was reported to PO Defelice.

CIVIL ACTION AMENDED COMPLAINT - 6

13. February 2023 FRANCYNA EVINS was indicted by an Essex County Grand Jury on criminal charges from the May 8, 2022, complaints of the Plaintiff.

14. Between January 2023 throughout May 2024 FRANCYNA EVINS began a cyber campaign of harassment and intimidation where she continued to accuse the plaintiff of physical abuse and harassment. The continued harassment caused the plaintiff emotional distress and loss of his employment for the 1st of several times. In addition,

15. February 2023 the plaintiff was called before the Carteret Municipal Court to answer allegations filed by the Francyna Evins of false reporting within the Borough of Carteret for the Municipal Complaint filed December 8, 2022. Prosecutor Patrick Wallmack of the Middlesex County Prosecutor's Office off assigned to prosecute the plaintiff for the allegations filed by Francyna Evins.

16. Sometime in March 2023 2nd Defendant Jenna Ventola was assigned to prosecute the actions of Francyna Evins. In late March the plaintiff contacted the 2nd Defendant where he and attorneys explained the continued criminal actions of Francyna Evins.

17. March through June of 2023, Honorable Judge Allen Cumba of the Carteret Municipal Court instructed both the plaintiff and the 4th defendant to submit written timelines and discovery detailing the events which transpired after the decision of the Essex County Superior Court Family Part, which was from December 1, 2022, until March 2023

18. The plaintiff submitted copies of NYPD incident reports filed four (4) days after the Essex Family decision, December 1,2022 providing the court with solid discovery of the previous duplicate report filed within the State of New York three (3) days before the 4th defendant filed the same allegations within the Borough of Carteret alleging the same offenses against the plaintiff.

19. The plaintiff also provided a copy of the certified transcript of the trial decision from December 1, 2022, providing the Carteret Court and 11th Defendant Judge Allen Cumba with exactly what was stated by the trial Judge within the Essex Family trial of the 4th defendant and included a certified copy of the dismissal of the 4th defendant cross complaint against the plaintiff.

CIVIL ACTION AMENDED COMPLAINT - 7

20. The plaintiff provided this timeline within verifiable discovery while the 4th defendant only provided a statement with allegations that could not be verified. The 4th defendant Francyna Evins provided no reports filed by the plaintiff after the restraining order was granted to verify the allegations of litigation abuse, nor was any evidence provided to support any acts of harassment committed by the plaintiff against 4th defendant Francyna Evins.

21. The 4th defendant, Francyna Evins, provided nothing to support her claims against the plaintiff. Despite the verifiable discovery of the plaintiff and the lack thereof submitted by the 4th defendant Francyna Evins the Carteret Court never spoke of the timeline again and continued forward with the prosecution of the defendant refusing to hold the 4th defendant accountable for any criminal conduct.

22. April 2023 the Carteret Court proceeded with the complaint of the plaintiff after repeated complaints to the Middlesex County Prosecutor's Office had been filed. Despite submitting a copy of the certified transcript from the Essex County Family trial of the defendant which stated in the words of the court detailing the allegations filed within Middlesex County had been addressed within the Essex Family Court trial

23. Carteret Court transferred the complaint filed by the Plaintiff back to Essex County Family Court stating the restraining order was not valid within Middlesex County therefore the court lacked jurisdiction. The plaintiff, however, was forced to continue as a defendant despite the court having direct evidence violating the plaintiffs' protections against double jeopardy.

24. September 9, 2023, Attorney John Rapaway of the Plaintiff attempted contact with the 2nd defendant Jenna Venola requesting assistance with the Richmond County District Attorney office who has been prosecuting the plaintiff for months regarding the retaliatory complaints filed by Francyna Evins. Despite promises of compliance with the Richmond County District Attorney, the 2nd defendant never contacted the office and ignored all requests for assistance by both attorney Rapaway and the plaintiff. Ultimately the plaintiff was able to submit the trial transcripts from the Essex Family Decision and obtain a copy of the criminal indictment of Francyna Evins which was submitted to Chief of Criminal Court operations: Darren Albansese

CIVIL ACTION AMENDED COMPLAINT - 8

of the Richmond County District Attorney's Office. On October 30, 2023, all charges were dismissed and immediately sealed within Richmond County New York against the Plaintiff.

25. Sometime in October of 2023 Francyna Evins obtained a public records transcript of another individual with the same name as the Plaintiff which she began altering and using within Family Court petitions claiming the Plaintiff was diagnosed with "Schizophrenia" and had hidden this from the court. Francyna Evins filed a motion pursuant to Carfagno v Carfagno attempting to have the final order dismissed with these altered records and making claims of "Litigation abuse" against the plaintiff. The Plaintiff was brought back before the Essex Family Court before Judge Amy Manigan to answer these allegations.

26. The plaintiff informed the office of the 1st and 2nd defendant Jenna Ventola via email about the continued harassment and intimidation propagated by Francyna Evin against the plaintiff and yet no assistance was provided to the plaintiff by these defendants as required by the law. These defendants refused to provide the plaintiff with any protection as is mandated by the Rights of Crime Victims and Witnesses Act or enforce its own state protected order obtained against the 4th defendant who was the listed criminal defendant within an active county criminal prosecution were the plaintiff was the listed victim of record.

27. During a period of more than one (l) year the plaintiff made numerous complaints against Francyna Evins and made countless follow-ups with the Office of the 1st defendant and its agents, 2nd Defendant Jenna Ventola, but no action was taken.

28. For instance, the Plaintiff sent an email to the Defendant on May 10, 2023, at 1:38 PM to one Jenna Ventola humbly asking her to reach out after his previous communications to the Defendant were ignored.

29. The Plaintiff followed up the foregoing with another email on May I1, 2023 at 2:49 PM to the said Jenna Ventola which verbatim read: "*I have begged for help from yourself and Valentina Griossre. Speaking with Valentina yesterday I finally understand that you guys will really not be helping me and this isn't a serious matter to her.* "

30. In the Plaintiffs' email sent on June 25, 2023, at 3:59 PM to Jenna Ventola&. Valentina Grossori the two prosecutors in the office of the Defendant assigned to handle the Plaintiff's complaints, he

CIVIL ACTION AMENDED COMPLAINT - 9

decried the fact he had been unfairly treated by the Defendants and his aggressor Francyna Evins has been allowed to continue her menacing & harassment despite losing a trial and being indicted.

31. In yet another email sent on July 7, 2023, at 1:37 PM to Jenna Ventola the Plaintiff sought assistance with regard to the harassment and stalking meted on him by Francyna Evins who had lied to police and the Plaintiff was arrested as a result. In the same email the Plaintiff states thus: *"I am still awaiting action and not to be deferred anymore. You were to call me back a few times and didn't. I ask that you do so today. "*

32. February 2, 2024, plaintiff reports to Carteret PD within Middlesex County to provide documentation to Officer Jonathan Defelice.

33. Plaintiff provides copies of the Final Restraining Order granted 12/1/2022; a copy of the NYPD domestic violence criminal incident report filed 12/5/2022; a copy of the 12/8/2022 Carteret Incident report taken by PO Defelice where 4th defendant Francyna Evins erroneously reported that the plaintiff had filed false charges within Essex County against her; a copy of the dismissal of the NYPD criminal prosecution for the 12/5/2022 NYPD incident report filed by 4th defendant; a copy of the 12/1/2022 dismissal of the allegations filed within Essex County by the 4th defendant and several violations filed within days of the loss of the Essex Family part trial decision against 4th defendant Francyna Evins.

34. Plaintiff informed PO Defelice that 4th defendant had been criminally charged in Essex County 6/13/2022; that an Essex County Temporary Restraining Order had been issued against her on 6/22/2022; that on July 8, 2022 6th defendant filed an Essex Family Part Temporary Restraining Order against the Plaintiff and several Police complaints after Essex Family Part commanded her to return stolen property to the Plaintiff; Plaintiff provided the Order from Essex Family Part dated 7/8/2022 to verify his statements.

35. On February 13, 2024, at 8:00 AM the Plaintiff sent an email to the Defendant officers which read:

*"Been fighting for my rights to get my daughter back for 2 years because of that message I gave you from July 8, 2022, when Francyna contacted my child's mother. This was sent to me today.*

*This is her mocking my loss of my child and still with the Dog! When will you see something is wrong with this woman? What will it take to convince your office of the danger this woman really is. She keeps losing the cases she's putting against me and when she runs out of options she becomes judge -jury and executioner. I deserve some peace. I was a great father, at one point also taken from me because my ex-girlfriend wanted my Dog. What do I need to do More to get the protection someone deemed more deserving would be granted. New Jersey has the toughest cyberbullying laws in the country, I have a final order of protection under NJ prevention of DV. I'm supposedly protected from intimidation and harassment, yet my offender can wage an unchecked campaign of social harassment and slander? Why does it seem that there is no one who can stop Francyna Evins? No sarcasm but what am I missing? Please someone help me understand as I'm at my wits end on how this might stop. "*

36. The above instances where the plaintiff has reached out to the office of the 1st Defendant and 2nd Defendant and was ignored are not exhaustive and the plaintiff shall at the opportune time during trial produce more emails in support of his case.

37. January 2023 the Plaintiff contacted 2nd Defendant Jenna Ventola requesting information about additional criminal complaints the plaintiff had filed and prosecutions which had been "Upgraded" from Newark Municipal Court to the Newark Superior Court. In an email which the plaintiff the 3rd Defendant Jenna Ventola erroneously claims that there were no complaints and denied any additional complaints being "Upgraded" from Newark Municipal to Essex Superior.

38. March 21, 2024, Plaintiff reported to the Carteret PD who is the 6th defendant herein and spoke to PO Jogn Gozzolino documented within complaint I-2024-011638. Plaintiff reported the contact of 6th defendant to the mother of his child attempting to both visit his only child who is a named party within final restraining order FV-07-003579-22. Plaintiff also reported that 4th defendant was attempting to interfere with the visitation proceeding with his child and contacting the mother to affect a negative result between the two parties. The plaintiff provided text conversations between the mother of his child and himself also conversations between the 6th defendant and the mother of his child asking to see the child which is forbidden by the active

CIVIL ACTION AMENDED COMPLAINT - 11

order of protection. PO Gozzolino reported this to Judge Allen Cumba who biased towards the plaintiff denied the plaintiff's complaint and refused to violate the 4th defendant. This further supports the continued bias and discrimination within Carteret law enforcement against the plaintiff despite valid verifiable discovery to support probable cause.

39. The Plaintiff made attempts to notify the prosecutors of Essex County by email and the trial Judge of his wish to be heard before the court during March 22, 2024 throughout March 30, 2024.

40. On or about March 26, 2024, the 5th defendant Cynthnia Hardaway Esq, appointed counsel to Francyna Evins emailed notice to the following agents of the Essex County Criminal Justice System which included several officers of the 1st defendant: Romesh Suduki, Justin Edwab, Jenna Ventola and Maryna Peres-Drace; it also included trial Judge Chandra Colemans Chambers, Special Remand Court and the Essex County Sheriff's.

41. In this email the 5th defendant Cynthia Hardaway distributed false information created by the 4th defendant Francyna Evins who had altered a public document obtained online to make it appear as though the plaintiff had a mental illness as stated above.

42. 5th defendant Cythnia Hardaway submitted another email with a Link to a YouTube Channel named @43yearoldbully "Cop Caller Clay" which she claimed had been created by the Plaintiff and used to threaten the 2nd Defendant Jenna Ventola.

43. The social media profile was created by 4th defendant Francyna Evins and intended for use to create bias and discrimination against the victim and plaintiff of this action.

44. The office of the 1st Defendant and its officers, 2nd and 3rd Defendants all in violation to Rules of Professional Standard 8.4 used this information to discriminate against the plaintiff and barred the plaintiff from the office of the 1st defendant which included the remainder of the trial of State of New Jersey v Francyna Evins refusing to grant him the right to be heard. This was also done by the Trial Judge Shandra Cole.

45. April 14, 2024, Plaintiff filed complaint with PO Michael Kazio, an officer of the 6th defendant the Carteret Police Department regarding the continued cyber harassment of 4th defendant Francyna Evins. Plaintiff produced evidence of public records altering and fraud where 4th

CIVIL ACTION AMENDED COMPLAINT - 12

defendant altered a public court transcript so that it would appear the plaintiff was the party within this transcript who admitted to being a diagnosed Schizophrenic.

46. Plaintiff provided screenshots of a "YouTube" channel created and controlled by the 4th defendant where using Artificial Editing technology the 4th defendant created over 300 videos where she altered the Plaintiffs voice and content in the hopes to further present the plaintiff as being deranged and violent towards her.

47. Plaintiff provided recent contact where the 4th defendant had electronically contact him via Facebook and evidence that the 4th defendant had been attempting contact with his infant child who is a named party within the final order FV-07-3579-22. Judge

48. Allen Cumba denied a contempt charge but referred it for investigation within the Carteret PD. Detective Anthony Nacco investigated the information of the plaintiff by subpoenaing the record of both YouTube and Verizon where it was determined that Francyna Evins did own and control the YouTube channel being used to defame and harass the Plaintiff.

49. Despite this information Judge Allen Cumbia still refused to issue a warrant for the continued harassment of 4th defendant Francyna Evins being committed against the plaintiff. This incident further supports the discrimination of the Carteret Police and Court to act against the 4th defendant for any of the criminal actions committed even those which are new offenses like public records from which is a criminal offense within the State of New Jersey.

50. May 15, 2024, Plaintiff called the 6th defendant herein, Carteret PD and requested an officer come to his home at 24 Orchard Street. Detective Megan Magalski responded and was informed by the plaintiff of contact from a producer of the TV show "Divorce Court" who had contacted the plaintiff on behalf of 4th defendant Francyna Evins requesting he appear on the show.

51. In the presence of Detective Magalski this Producer: Kerri Burton stated that Francyna Evins had contacted the show requesting the show contact the plaintiff on her behalf which is a violation and 3rd party contact initiated by the 6th defendant.

52. The producer has also emailed the plaintiff which was shown to Detective Magalski. The producer offered the plaintiff $300 all heard by Detective Magalaski who reported this all to Judge Allen Cumba upon her return to the Station.

CIVIL ACTION AMENDED COMPLAINT - 13

53. Judge Allen Cumba, refused to violate 4th defendant Francyna Evins and dismissed the matter as not a violation to the active NO-Contact restraining order in effect against the Plaintiff. This incident supports the continued bias and discrimination of the Carteret Court against the plaintiff in favor of the 6th defendant. The incident was documented as complaint I-2024-016631

54. May 20, 2024, plaintiff contacted the 5th defendant Cynthia Hardaway requesting in writing the removal and correction of the falsified information submitted to the Essex County Judicial System on March 26, 2024.

55. 5th Defendant Cynthia Hardway refused to retract the falsified information submitted and further used it to represent 4th defendant in the Essex Family Part Carfagno reconsideration filed by the 4th defendant Francyna Evins. 5th defendant Cynthia Hardway hoped to use the falsified information from the trial court with the Family Part reconsideration against the plaintiff despite knowledge that the information submitted was false.

56. March 27, 2024, 3rd Defendant Jenna Ventola used the falsified information submitted by the 5th defendant Cynthia Hardaway to bring an action against the plaintiff who was still the active listed victim of the State of New Jersey v Francyna Evins before Essex Family court for violations to the VASPA Act claiming Cyber Harassment for the content created by Francyna Evins.

57. 2nd Defendant Jenna Ventola during the VSAPA trial in May of 2024 made numerous erroneous statements which will be detailed at trial falsifying information from the trial of Francyna Evins to use in her argument support her claims of physical fear of the Plaintiff.

58. There remain numerous complaints against the 4th Defendant Francyna Evins within Essex County and Middlesex Count all unprosecuted by the 1st and 6th defendants as agencies which include the 2nd , 3rd , 7th , 8th , 9th 10th , 11th and 12th defendants due to civil litigation, internal affairs complaints and grievances filed by the Plaintiff further violating his civil rights and Fourteenth Amendment Protections.

59.

## **COUNT I. THE NEW JERSEY CIVIL RIGHTS ACT N.J.S.A. 10:6-2**

CIVIL ACTION AMENDED COMPLAINT - 14

60. New Jersey Revised Statutes Title 10 – Civil Rights Section 10:6-2 states that "Any person who acting under "color of law" has deprived another person of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, the deprived party may bring a civil action for damages and for injunctive or other appropriate relief

61. Plaintiff alleges that Defendants, through their own policies, practices, and customs, did violate Plaintiff's rights in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2. The plaintiff brings this complaint before the court alleging violations committed against him by the following defendants who acting "under color of law" did intentionally violate his privileges, protected rights and immunities granted by statue and the Constitution of the State of New Jersey.

62. The defendants include: (1) 2nd Defendant Jenna Ventola, (2) 3rd Defendant "John Doe, (3) 6th Defendant Carteret Police Department, which include 7th Defendant Johnathan Defelice, 8th Defendant Police officer Torobino, and 9th Defendant Sergeant Jason Hanes, (4) 10th Defendant, Municipal Prosecutor Patrick Wallmack and (5) 11th Defendant Judge Allen Cumba and (6) 12th Defendant Hon Judge Chandra Coleman. As detailed herein, these defendants did intentionally deny the plaintiff protective rights awarded by the Superior Court of New Jersey, and immunities granted by New Jersey Revised Statutes Title 9.

63. The NJCRA is modeled after the federal Civil Rights Act, 42 U.S.C. § 1983, and provides a state remedy for the deprivation or interference with civil rights secured under the New Jersey Constitution and laws, as well as federal rights Hardy v. Jackson, 476 N.J. Super. 394, Harris v. City of Newark, 250 N.J. 294, Greenman v. City of Hackensack, 486 F. Supp. 3d 811. The statue states that any person who has been deprived of substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.  Federal courts have consistently interpreted NJCRA claims analogously to § 1983 claims, meaning that the legal principles and elements required to establish a claim under NJCRA are like those under § 1983 Dickerson v. Wallkill Valley Reg'l High

Sch. Bd. of Educ., 2020 U.S., Tucker v. State Dep't of Corr., 2018 U.S. Dist., Grant v. Slattery, 2022 U.S. Dist.

64. The New Jersey Civil Rights Act (NJCRA) similarly offers a state law remedy for such violations, ensuring that individuals are protected from threats, intimidation, or coercion by those acting "under color of law" Griffin v. City of Newark, 2021 U.S., Castro v. New Jersey, 521 F. Supp. 3d 509. The plaintiff alleges that Defendants violated this statue when through coercion, threats and intimidation they denied him protection and process entitled to the Plaintiff and mandated by language of state law statue specifically the New Jersey Prevention of Domestic Violence act and the Crime Victim and Witness Act which both provide rights to the Plaintiff who is a victim of Domestic Violence and a Witness/Victim of a crime in accordance with state law.

65. Plaintiff incorporates by reference all preceding paragraphs within the "Statement of Facts" as is fully set forth herein as substance to the allegations regarding the civil rights violations against the Plaintiff.

66. The Plaintiff as defined by Title VII of the Civil Rights Act of 1964 is a member of a protected class and this is supported by established case law regarding the rights of African American males being such.

67. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to emotional distress, malicious prosecution, financial loss and other compensatory damages.

68. Despite an extensive history of continued acts of harassment during the active prosecution of his offender who is the 4th Defendant, the 2nd defendant intentionally neglected all additional criminal acts committed by the 4th defendant to deny the Plaintiff the protections and rights awarded to him by the Superior Court of New Jersey.

69. Discovery will support allegations against the 2nd Defendant Jenna Ventola, and how 2nd Defendant did intentionally and maliciously provide the Plaintiff with false information on numerous occasions to misled and deter the Plaintiff from seeking assistance or protections granted to him by the Superior Court of New Jersey which protected the Plaintiff from acts of harassment committed by the 4th Defendant, Francyna Evins.

CIVIL ACTION AMENDED COMPLAINT - 16

70. The 2nd Defendant Jenna Ventola did intentionally deny the Plaintiff these rights and protections knowing he was being discriminated against by law enforcement due to his status as an African American male. 2nd Defendant intentionally ignored discovery validating that 4th Defendant Francyna Evins, was abusing the judicial process taking dismissed allegations from within Essex County Superior into various other municipalities creating new criminal allegations against the Plaintiff after the allegations were dismissed in the Plaintiffs favor.

71. These new criminal cases created by the 4th Defendant were used by the 4th defendant and coconspirators to harass and attempt to force the Plaintiff to drop the active final restraining order and the criminal accusations against the 4th Defendant. 2nd Defendant was advised by the legal counsel of the Plaintiff, whom the 2nd Defendant requested contact with during the criminal prosecution in order to be kept informed of what was happening in those criminal prosecutions.

72. The Rights of Crime Victims and Witness Act (N.J.S.A. § 52:4B-36)(c) states that a victim/witness is:  To be free from intimidation, harassment or abuse by any person including the defendant or any other person acting in support of or on behalf of the defendant, due to the involvement of the victim or witness in the criminal justice process.

73. 2nd Defendant Jenna Ventola possessed a responsibility to protect victims and witnesses yet allowed a criminal defendant (4th Defendant Francyna Evins) to commit numerous acts of harassment and witness intimidation against the plaintiff who was the state's victim/witness as defined by the above statue. These acts are supported by email communications and attorney affidavits; witnesses who were present during the 1st day of the trial of the 4th Defendant Francyna Evins, and the attorney from New York State who will testify that attempts where made to notify the 2nd Defendant of the danger faced by the Plaintiff from the 4th Defendant, her family and associates.

74. 2nd Defendant did seek to deny the Plaintiff protections granted by the State of New Jersey Constitutions and State Law. 2nd Defendant refused to grant the Plaintiff any protection as the victim against 4th Defendant Francyna Evins, intentionally allowing harassment that included significant acts of cyber harassment, false swearing, litigation abuse and fraud; and maliciously ignoring the acts of intimidation committed against the Plaintiff during the entire time period of the prosecution of 4th Defendant Francyna Evins.

CIVIL ACTION AMENDED COMPLAINT - 17

75. 4th Defendant Francyna Evins and 5th Defendant Cynthia Hardaway provided falsified information to the 2nd Defendant Jenna Ventola, 1st Defendant Essex County Prosecutors Office, 12th Defendant Hon. Judge Chandra Colemen and other county law enforcement officials making claims that the Plaintiff was mentally ill and received Social Security Insurance (SSI) for his mental disability. Included in this falsified communication were claims that the Plaintiff had made threats of physical violence against the 2nd Defendant Jenna Ventola.

76. Despite having investigated the Plaintiff, and a determination being made Essex County Prosecutor Investigators that the Plaintiff did not own or control the social media account sent the 2nd Defendant Jenna Ventola, by 5th Defendant Cynthia Hardaway, the 2nd Defendant did use the fabricated information to obtain a restraining order against the Plaintiff which barred the Plaintiff from the place of work of the 2nd Defendant which is the Essex County Prosecutors Office and the trial court of the 4th Defendant.

77. The Plaintiff was never contacted by the 2nd or 3rd Defendant as the victim, which violated his rights in accordance with state law. New Jersey Statue relating to Crime Victims and Witnesses (N.J.S.A. § 52:4B-34 to -38) mandates the 2nd and 3rd Defendants to keep the victim informed during all stages of the prosecution of a defendant, yet the Plaintiff was denied this right due to a court order that was obtained by the 2nd Defendant, who used falsified information submitted against the Plaintiff to obtain and restraining order barring the Plaintiff from the 2nd Defendants place of work.

78. The 2nd and 3rd defendants will claim 11th Amendment absolute immunity for acts committed as the prosecutor. The Plaintiff states that the 2nd and 3rd defendants are not entitled "absolute immunity" for the actions committed as investigators and/or administrators or further personally taken against the plaintiff using falsified information from an active state prosecution which barred the Plaintiff from the place of work of the 2nd Defendant.

79. 2nd Defendant Jenna Ventola did use falsified discovery obtained after being contacted via email by the 5th Defendant Cynthia Hardaway to petition the Essex County Superior Court Chancery Division for a protection order pursuant to the Victim Survivor and Protection Act (VSPA) which barred the Plaintiff from the place or work or any location of the 2nd Defendant. 2nd Defendant was the acting prosecutor for the 4th Defendant, and the 1st Defendant and 3rd Defendants having failed to contact

CIVIL ACTION AMENDED COMPLAINT - 18

the Plaintiff allowed the Plaintiff to believe that the 2nd Defendant was still the acting prosecutor after March 20, 2024. No attempts were made to inform the Plaintiff that 2nd Defendant would not be present and therefore the Plaintiff could attend the trial of his offender. This was done intentionally by 1st, 2nd and 3rd Defendants as part of the conspiracy to misinform the Plaintiff and create a barrier which would deter that Plaintiff from appearing at the courthouse.

80. The New Jersey Supreme Court in Cashen v. Spann emphasized that prosecutors and their assistants are charged with the obligation to act in due accordance with the law in the discharge of their public duties. They are presumed to act legally, but if it is proven that they acted in excess of their official duty for personal reasons, they can be held civilly liable for such acts <u>Cashen v. Spann, 66 N.J. 541</u>. This principle reinforces that any deviation from their official duties for personal reasons, including withholding evidence, is not permissible

81. New Jersey statutes provide victims of domestic violence with certain rights to be heard in court proceedings involving the defendant. N.J. Stat. § 2C:25-29 outlines the procedures and reliefs available in domestic violence cases, ensuring that victims are protected, and their voices are heard. Victims of domestic violence in New Jersey have statutory and constitutional rights to be heard in court proceedings involving the defendant, including trials where the defendant is being prosecuted for offenses against the victim.

82. The New Jersey Constitution, Article I, Paragraph 22, ensures that victims of crimes are treated with fairness, compassion, and respect by the criminal justice system. It grants victims the right to be present at public judicial proceedings, except when sequestered according to law N.J. Const., Art. I, Para. 22, Rights of crime victims.

83. During the trial of the 4th Defendant, The Judge Hon Chandra Colemen did openly deny the plaintiffs status as the victim within the domestic violence final restraining order between the Plaintiff and the 4th Defendant Francyna Evins. 2nd Defendant being the prosecutor knew that the Plaintiff was the legally documented victim as regarded by The New Jersey Prevention of Domestic Violence Act, but sought to intentionally deny this with the trial court to lesson the impact of harassment by the 4th Defendant Francyna Evins.

CIVIL ACTION AMENDED COMPLAINT - 19

84. In the case of Sacharow v. Sacharow, the court emphasized that a person is not considered a victim of domestic violence unless a final restraining order has been entered with findings of fact and conclusions of law that an act of domestic violence occurred <u>Sacharow v. Sacharow, 177 N.J. 62</u>. Therefore, if a final restraining order is in place, the individual is legally recognized as a victim

85. In New Jersey, a victim named in a domestic violence final restraining order (FRO) is legally recognized as a victim of domestic violence. According to <u>N.J. Stat. § 2C:25-19, a "victim of domestic violence" includes any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by an adult or emancipated minor § 2C:25-19. Definitions</u>. Therefore, if a state final restraining order has named an individual as the protected party, they are legally recognized as a victim of domestic violence.

86. A trial judge who denies the Plaintiff their status as a victim within a state final restraining order, and further states on the record that "they are not the victim," violates the victim's rights. The New Jersey Constitution, Art. I, Para. 22, ensures that a victim of a crime shall be treated with fairness, compassion, and respect by the criminal justice system and shall not be denied the right to be present at public judicial proceedings <u>N.J. Const., Art. I, Para. 22, Rights of crime victims. Additionally</u>, N.J. Stat. § 52:4B-36 outlines various rights for crime victims, including the right to be treated with dignity and compassion and to be free from intimidation, harassment, or abuse <u>§ 52:4B-36. Findings, declarations relative to rights of crime victims, witnesses.</u>

87. 12th Defendant Hon Judge Chandra Colemen and prosecutors that include the 2nd Defendant Jenna Ventola and 3rd Defendant "John Doe" did deny the Plaintiff rights granted by the New Jersey Constitutional Rights and those rights granted by statue of law in the State of New Jersey.

88. In New Jersey, a judge addressing alleged misconduct by prosecutors or attorneys during a trial must follow specific procedures to ensure the defendant's right to a fair trial is protected and the victims right to justice is protected. If prosecutorial misconduct is alleged, the judge must assess whether the misconduct was so egregious that it deprived the defendant of a fair trial or denies justice to any party connected to the action. This involves considering whether defense counsel made timely objections, whether the offending remarks were withdrawn promptly, and whether the court gave

CIVIL ACTION AMENDED COMPLAINT - 20

curative instructions to the jury State v. Feaster, 156 N.J. 1, State v. Abdullah, 372 N.J. Super. 252, State v. Pressley, 232 N.J. 587.

89. Judges have a responsibility to take appropriate action if they receive reliable information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct. This includes informing the appropriate authority if the violation raises a substantial question as to the lawyer's honesty, trustworthiness, or fitness as a lawyer N.J. Court Rules, CJC Canon 3.15, RESPONDING TO JUDICIAL AND LAWYER MISCONDUCT.

90. A defense attorney who introduces a fraudulent narrative and material evidence to prosecutors and the trial court that results in the victim being barred from a state prosecution are matters that required the trial judge to seek further clarification, yet no investigation was conducted by the 12th Defendant Hon Judge Chandra Colemen. This failure of Judicial process did result in the denial of the Plaintiffs rights to be heard and present within the trial of his offender who is the 4th defendant Francyna Evins.

<u>Borough of Carteret</u>

91. New Jersey Revised Statutes Title 9 - Children--Juvenile and Domestic Relations Courts Section 9:6-8.13 – Immunity states: "Anyone acting pursuant to this act in the making of a report under this act shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such person shall have the same immunity with respect to testimony given in any judicial proceeding resulting from such report."

92. 10th Defendant Patrick Wallmack, and 11th Defendant Judge Allen Cumba did deny the Plaintiff the immunity granted by the above statue when for a period exceeding eighteen (18) months, the Plaintiff was maliciously prosecuted for the reporting of the 4th Defendant Francyna Evins for the assault of his then infant Daughter Dior Smith, who is additionally a protected party within the active state final restraining order.

93. As stated above detailed within the summary of facts, 4th Defendant Francyna Evins did report the dismissed allegations of the Essex Superior Court Chancery Division to police in the borough of Carteret seven (7) days after the dismissal of her cross complaint against the Plaintiff.

94. 4th Defendant Francyna Evins did instruct 7th Defendant Jonathan Defelice that she was not a resident of Carteret, nor did she have any business in Middlesex County. 4th Defendant Francyna Evins did

instruct 7th Defendant Jonathan Defelice that her sole purpose was to have the Plaintiff charged despite there being an active restraining order against her and there having been a final restraining order granted to the plaintiff naming 4th defendant as the offender.

95. There existed no probable cause to support a false report allegation against the Plaintiff by 4th Defendant other than a letter from DCYPP stating the investigations conclusion was determined to be "unfounded". Unfounded for purposes of the law does not mean the report filed was found to be false, which was known to both 10th Defendant Patrick Wallmack, and 11th Defendant Judge Allen Cumba.

96. Officials within the Carteret Police (6th , 7th , 8th and 9th Defendants), Carteret Municipal Court (11th Defendant Judge Allen Cumba) and the prosecutor's office (10th Defendant Patrick Wallmack) did work to deny the plaintiff protections granted after a final decision was determined naming 4th defendant Francyna Evins as the offender within a state final restraining order. Carteret Police, Carteret Court and Prosecutors did conspire with the 4th Defendant for a period of more than one (1) year seeking to deny the Plaintiff his protected rights and immunities becoming complicit in the acts of harassment of the 4th defendant Francyna Evins.

97. Carteret lacked jurisdiction over the matter reported by the 4th Defendant. The report was initially reported within the county of Essex, not Middlesex which was reported to both prosecutor Patrick Wallmack (10th Defendant) and Judge Allen Cumba (11th Defendant) by the defense for the Plaintiff during numerous court appearances. An Essex County final hearing transcript was additionally provided to substantiate the defense that the report was made within the county of Essex in addition to the amended TRO filed by the 4th Defendant Francyna Evins, which had been dismissed, were additional allegations were added 10/6/2022 claiming the Plaintiff had "falsely accused 4th defendant of abuse of his child".

98. Borough of Carteret lacked jurisdiction to prosecute the Plaintiff resulting from N.J. Stat Title 9:6-8.13 the immunity statue and the county's lack of jurisdiction.

99. 10th and 11th Defendant did deny the plaintiff privileges and immunities secured by state law in the prosecution of State v Clayton Howard, Municipal Summons # 1201-S-2022-00450 under which the

CIVIL ACTION AMENDED COMPLAINT - 22

Plaintiff was originally charged with 2C:28-4 - False reports to law enforcement authorities, but this was later amended to 2C:28-3 - Unsworn falsification to authorities.

100. The Plaintiff is entitled to appropriate relief in accordance with the New Jersey Civil Rights Act N.J.S.A. 10:6-2 as a result of the damages he has suffered financially and emotionally which are a direct result of the actions of the named defendants; who through negligence, fraudulent action and intentional discrimination did actively seek to deny the plaintiff immunities, privileges and protections despite knowledge that the Plaintiff is a protected class as defined by the Civil rights act of 1964. These defendants sought to deprive the Plaintiff of the rights granted to him in accordance with State Law and the State of New Jersey's constitution. The Plaintiff requests the court provide any relief it deems appropriate to include punitive damages, compensatory damages and injunctive relief against further malicious acts taken as related to the actions of the defendants.

### COUNT II. 42 U.S.C. § 1983: MONELL v DEPT. OF SOCIAL SERVICES CLAIM

101. The Plaintiff brings a claim against the Carteret Police Department and its Officer Johnathan Defelice and Police Officer Torobino, Sergeant Jason Hanes, the Carteret Municipal Court and Judge Allen Cumba who lacked proper training regarding the enforcement of domestic violence law in the State of New Jersey. Monell v. Department of Social Services, set standards which require proof of a policy, custom, or practice that caused the constitutional violation. The New Jersey Prevention of Domestic Violence act provides a victim of domestic violence with rights that are described through the language used within state statue. As described above, officers of the Carteret PD and Municipal Judge Allen Cumba, who acted "under color of law" did employ a policy and/or practice that disregarded the rights of the plaintiff as the African American male victim of a State of New Jersey issued domestic violence restraining order.

102. N.J. Court Rules, R. 5:7A, which governs the issuance of restraining orders, supports this by outlining the procedures for issuing and enforcing such orders, further indicating their statewide applicability N.J. Court Rules, R. 5:7A, Domestic Violence: Restraining Orders. Therefore, law enforcement

CIVIL ACTION AMENDED COMPLAINT - 23

officers in any county in New Jersey are required to enforce a final restraining order issued by the Superior Court.

103. Officers of the Borough of Carteret Police Department Defelice and Torbino, who are uniform officers and Sgt. Jason Hanes who acts in a supervisor capacity did inform the Plaintiff on numerous separate occasions beginning in April of 2023 throughout April 2024, that his final restraining order was not enforceable within the Borough of Carteret because it was originally granted in Essex County. The Plaintiff supports this allegation with the affidavit of Richard Petrocy, who was a witness who observed the 5th Defendant Francyna Evins outside the residence of the Plaintiff seven (7) days after the granting of the final order watching his home.

104. Mr. Petrocy and the Plaintiff made several separate attempts to report this to the Carteret Police Department, but were denied by Officers who claimed without "Video" footage the report could not be taken. On one attempt, Officer Jonathan Defelice directly informed both the Plaintiff and Mr. Petrocy that "Ring Camera" or "Video" footage was needed to substantiate the sight of the 5th Defendant and that the word of the Plaintiff and the witness was not enough to detain the 5th Defendant.

105. Carteret Police Department officers, including Defendants Jonathan DeFelice, Torobino, and Jason Hanes, informed Plaintiff that the restraining order was not enforceable within Middlesex County.

106. This information was incorrect as per N.J. Stat. § 2C:25-28(p), which states that any temporary or final restraining order issued pursuant to this act shall be in effect throughout the State and shall be enforced by all law enforcement officers § 2C:25-28. Filing complaint alleging domestic violence in Family Part; proceeding

107. New Jersey law does not require a victim within a domestic violence final restraining order to provide video proof of the defendant violating the order by coming to a location listed in the restraining order as a place where the defendant is prohibited from harassing the victim. Furthermore, N.J. Court Rules, R. 5:7A, which govern the application and issuance of restraining orders, also do not require video proof for the enforcement of such orders. The rules focus on the testimony and evidence presented by the victim and the findings of the court N.J. Court Rules, R. 5:7A, Domestic Violence: Restraining Orders. The statement of the Plaintiff and a corroborating witness was enough

CIVIL ACTION AMENDED COMPLAINT - 24

to substantiate a violation, but gender biased, and inadequate training of officers resulted in the Plaintiff rights being intentionally ignored.

108. There are more than six incidents with law enforcement where due to improper training and lack of knowledge regarding the enforcement of Domestic Violence restraining orders, the officers of the Carteret PD named, and municipal judge Allen Cumba failed to provide the Plaintiff the due process detailed within the enforcement order. As mentioned above in the statement of facts, Officer Jonathan Defelice intentionally falsified the statement given by the Plaintiff regarding the false reports filed within Carteret. Officer Defelice despite being given supporting court documentation falsified statements to Judge Allen Cumba resulting in a denial of the Order.  Reports filed in March, April and May of 2024 all reporting harassment of the Plaintiff by the 5th Defendant were denied by Judge Allen Cumba, who had been overseeing the prosecution of the Plaintiff for the false allegations filed by the 5th Defendant on 12/8/2022.

109. At every instance during February 2024 through May 2024 Judge Allen Cumba denied enforcement of the order in favor of the 5th Defendant despite direct testimony in May 2024 from PO Megan Magalawski, informing the court that PO Magalawski had personally witnessed a 3rd party contact violation where a producer from the TV show "Divorce Court" contacted the Plaintiff and offered the Plaintiff $300 to appear and dismiss the restraining order against the 5th Defendant. When asked if the 5th Defendant had directed the producer to call the Plaintiff, PO Magalawski clearly heard the producer state that 5th Defendant, Francyna Evins had directed the producer to contact the Plaintiff. Had Judge Allen Cumba been knowledgeable regarding Domestic Violence restraining orders and the laws of the State of New Jersey, it would have been known that any contact to the Plaintiff by another party on the direction of the Defendant is a violation of the "No 3rd Party Contact" stipulation of the restraining order.

110. A "no third-party contact" provision in the context of a restraining order in New Jersey legally prohibits the defendant from making any form of contact with the victim, either directly or indirectly through another person. This includes personal, written, electronic, or telephone communication, and extends to any contact initiated through an agent or intermediary § 2C:12-10.1. Conviction for

CIVIL ACTION AMENDED COMPLAINT - 25

stalking, permanent restraining order, § 2C:44-8. Convicted defendants, prior restrictions continued, § 30:4-123.103. Prohibition against making contact with victim.

111. N.J. Stat. § 2C:12-10. 1, a restraining order can specifically restrain the defendant from making contact with the victim, including forbidding the defendant from initiating any communication likely to cause annoyance or alarm, whether personally or through an agent § 2C:12-10.1. Conviction for stalking, permanent restraining order.

112. N.J. Stat. § 2C:44-8(b) reinforces this by prohibiting the defendant from making contact with the victim or others, including through an agent, in any manner that would likely cause annoyance or alarm § 2C:44-8. Convicted defendants, prior restrictions continued.

113. N.J. Stat. § 30:4-123.103(a) clarifies that making contact with a victim includes contact made personally or through an agent, encompassing personal, written, electronic, or telephone communication § 30:4-123.103. Prohibition against making contact with victim.

114. The Plaintiff reported to the Carteret Police Department in March 2024, providing supporting evidence for the probable cause necessary to hold the 5th Defendant accountable for the violation of the restraining order and provided text messages where the 5th Defendant had been attempting to contact the Plaintiffs daughter, who is a protected party within the final restraining order and a minor. Despite the evidence provided by the Plaintiff to support the allegations, Judge Allen Cumba motivated by biased and discrimination, or a complete lack of adequate knowledge denied a violation to the active restraining order as he had done on numerous separate occasions previously.

115. Case law also supports this interpretation. In "B.C. v. T.G. ," the court issued a final restraining order prohibiting the defendant from contacting the plaintiff and extended this prohibition to include the plaintiff's family members, demonstrating the broad scope of no-contact provisions B.C. v. T.G., 430 N.J. Super. 455. The Plaintiffs infant child is a named protected party within the active order therefore the law mandates the enforcement of the order. A "no third-party contact" provision in a restraining order in New Jersey is a comprehensive prohibition against any form of communication with the victim, directly or indirectly, to ensure the victim's protection and peace of mind.

CIVIL ACTION AMENDED COMPLAINT - 26

116. Defendant Judge Allen Cumba and the Carteret Municipal Court engaged in a policy that denied Plaintiff's protective rights under the state order, despite extensive probable cause supporting violations of the order.

117. The Borough of Carteret failed to provide adequate training to its police officers and municipal court officials, including Judge Allen Cumba, regarding the enforcement and applicability of state-issued final restraining orders.

118. This failure to train resulted in the deprivation of Plaintiff's rights granted by the Superior Court within the restraining order, causing him significant emotional distress, financial harm and malicious prosecution which lasted over eighteen (18) months.

119. The Borough of Carteret, through its failure to train its employees, exhibited deliberate indifference to the rights of individuals holding state-issued restraining orders. Judge Allen Cumba as a municipal judge is mandated to enforce state law and domestic violence statue when it relates to the violation of an active restraining order and whether it is "enforceable" within the borough of Carteret. Sgt Jason Hanes acts as supervisor to both Officer Johnathan Defelice and Officer Torobino and the Sergeants lack of knowledge regarding the enforceability of a statewide restraining order reflects on those who he holds supervision over. There as established in Monell v. Dept. of Social Services, 436 U.S. 658 (1978), the borough of Carteret is responsible for the poor training of those who act "under color of" law to enforce policy and law within the municipality.

120. Plaintiff seeks all appropriate relief allowed pursuant to a Monell claims under 42 U.S.C. § 1983, including compensatory damages, punitive damages, attorney's fees, and costs.

### ESSEX COUNTY

121. 1st Defendant is responsible for the training of its officials and employees.

122. 2nd Defendant Jenna Ventola lacked the necessary knowledge regarding procedures and mandates of state issued restraining orders

123. 2nd Defendant Jenna Ventola, over the course of more than one (1) year, did fail to properly recognize and address the continued issues regarding the intimidation and harassment of the Plaintiff who was protected by a state issued final domestic violence restraining order.

CIVIL ACTION AMENDED COMPLAINT - 27

124. The Plaintiff was also the listed victim within the prosecution charged to 2nd Defendant of the 4th Defendant; State of New Jersey v. Francyna Evins prosecutor file 22-003739.

125. The N.J. Const., Art. I, Para. 22, Rights of crime victims and N.J. Stat. § 52:4B-36, Crime Victim and Witness Act provides prosecutors with mandated procedure and conduct as it relates to the treatment and handling of victims.

126. <u>N.J. Const., art. I, para. 22</u> states: "A victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature."

127. N.J.S.A. § 52:4B-36 specifically details ten (10) of the eighteen (18) rights that crime victims are mandated to have within the state of New Jersey. For purposes of this paragraph the Plaintiff wishes to highlight:

a) To be treated with dignity and compassion by the criminal justice system;

b) To be informed about the criminal justice process;

c) To be free from intimidation, harassment or abuse by any person including the defendant or any other person acting in support of or on behalf of the defendant, due to the involvement of the victim or witness in the criminal justice process;

d) To have inconveniences associated with participation in the criminal justice process minimized to the fullest extent possible;

g) To be notified in a timely manner, if practicable, if presence in court is not needed or if any scheduled court proceeding has been adjourned or cancelled;

j) To be provided a secure, but not necessarily separate, waiting area during court proceedings;

k) To be advised of case progress and final disposition and to confer with the prosecutor's representative so that the victim may be kept adequately informed;

CIVIL ACTION AMENDED COMPLAINT - 28

o)  To have the opportunity to consult with the prosecuting authority prior to the conclusion of any plea negotiations, and to have the prosecutor advise the court of the consultation and the victim's position regarding the plea agreement, provided however that nothing herein shall be construed to alter or limit the authority or discretion of the prosecutor to enter into any plea agreement which the prosecutor deems appropriate;

r)  To appear in any court before which a proceeding implicating the rights of the victim is being held, with standing to file a motion or present argument on a motion filed to enforce any right conferred herein or by Article I, paragraph 22 of the New Jersey Constitution, and to receive an adjudicative decision by the court on any such motion.

128. Plaintiff alleges that 1st Defendant is responsible for the lack of training, legal knowledge and procedural knowledge of the 2nd and 3rd Defendants who are prosecutors within the Office of the 1st Defendant.

129. As prosecutors, the 2nd and 3rd Defendants are required to be knowledgeable regarding the laws of the State of New Jersey. Additionally, the 1st Defendant is mandated to provide prosecutors with training regarding domestic violence procedure and laws. The 1st Defendant is also responsible for the training of the 2nd and 3rd Defendants as it regards the treatment and/or "handling" of crime victims and witnesses within state prosecutions.

130. 2nd and 3rd Defendant did fail to adhere to the above ten (10) stipulations set forth in N.J.S.A. § 52:4B-36 and the language N.J. Const., art. I, para. 22 through the intentional neglect, malicious actions and unprofessional treatment of the Plaintiff.

131. 2nd and 3rd Defendants did allow the intimidation, harassment and additional criminal conduct committed against the Plaintiff which violated the Plaintiffs rights as the listed victim in both a state final restraining order and as the states witness in an active prosecution.

132. The Plaintiff states he was kept out of judicial proceedings, denied access to protection despite 2nd Defendants knowledge that the 4th Defendant was actively pursuing the Plaintiff, treated unfairly and deceived and more importantly ultimately barred from the trial of the 4th Defendant by use of a restraining order filed by the 2nd Defendant.

CIVIL ACTION AMENDED COMPLAINT - 29

133. The 2nd Defendant did use fabricated information submitted by the 4th and 5th Defendants to make claims in the Essex County Superior Court Chancery Division pursuant to the VSAPA (Victim Survivor and Protection Act) of cyber harassment against the Plaintiff.

134. The 2nd Defendant made allegations that Plaintiff threatened her physically and directly using his social media platform and directed these threats at her. This was supported by the 1st Defendant who in collusion with the 2nd Defendant did support the VSAPA hearing providing a false narrative to support the fraudulent claims of the 2nd Defendant.

135. This was done collectively and included 1st, 2nd , 3rd, 4th and 5th Defendants, 1st and 3rd Defendants learned before the filing of the 2nd Defendants petition within the Essex Superior Court Chancery Division that the Plaintiff had not created the content emailed to the 2nd Defendant. 4th Defendant was aware the Plaintiff had not created the content because it was created by the 4th Defendant and 5th Defendant was made aware of the truth by 4th Defendant.

136. 2nd Defendant Jenna Ventola states within the transcript of the Essex County Chancery Division trail for docket FV-07-3243-24 (Which is included in discovery), that investigators from the office of the 1st Defendant did investigate and attempted to criminally charge the Plaintiff for threatening a state prosecutor.

137. The office of the 1st Defendant could not criminally charge the Plaintiff once it was discovered the Plaintiff did not own or control the social media content which had been emailed to the 2nd Defendant March 26, 2024 by the 5th Defendant. The 1st Defendant to include 2nd and 3rd Defendants all possessed knowledge that the Plaintiff had been "setup" using fabricated discovery sent by the 5th Defendant who was the defense attorney for the 4th Defendant.

138. No criminal complain was ever filed against the plaintiff as per the 2nd Defendant because investigators within the office of the 1st Defendant informed the 2nd Defendant that the Plaintiff had not sent the content used by the 5th Defendant no had the Plaintiff created the content.

139. Despite evidence which vindicated the Plaintiff, 2nd Defendant manipulated evidence, falsified testimony and used her position as a state prosecutor to further violate the rights of the Plaintiff when she filed a petition within the Essex Superior Chancery Division requesting a restraining

CIVIL ACTION AMENDED COMPLAINT - 30

order. It should be noted that the Plaintiff never threatened the 2nd Defendant and discovery will support this.

140. The 4th Defendant Francyna Evins has been criminally charged with the social media content sent by the 5th Defendant, Cynthia Hardaway to 2nd Defendant Jenna Ventola.

141. The 2nd Defendant was contacted by the Plaintiff on numerous occasions seeking assistance with stopping the harassment of the 4th Defendant. The 2nd Defendant lacked knowledge of domestic violence procedures, pretended to never have answers and constantly advised the Plaintiff she would contact superiors.

142. The officials of the office of the 1st Defendant are required by state law to abide by rules set forth concerning the treatment of Victims and Witnesses and the rights of domestic violence victims. The Plaintiff alleges he was treated differently with the 1st, 2nd, 3rd, 12 Defendants refusing to respect the state mandate rights of the Plaintiff due to his gender and race.

143. This is further supported by the trial record where the 12th Defendant is quoted denying to Plaintiff his status as the victim with respect to the final restraining order that was in place against the 4th Defendant. The trier of fact who is the 12th Defendant refused to acknowledge the Plaintiffs status as the protected party during the trial of the 4th Defendant. This created unfair prejudice against the Plaintiff as it minimized the history of the domestic violence dispute between the Plaintiff and 4th Defendant.

144. 1st Defendant, nor any of its officers that include the 2nd and 3rd Defendants sought to respect the rights of the Plaintiff during an active state prosecution. The 1st, 2nd and 3rd Defendants conspired to used the restraining order obtained by the second to deny the Plaintiff access to the proceedings.

145. No officials/officers from the office of the 1st Defendant, which include the 2nd and 3rd Defendants made any efforts to contact the Plaintiff regarding changes in the prosecution or any updates in the legal proceedings.

146. The Plaintiff has received no contact as of the date of this filing.

147. The 1st, 2nd and 3rd Defendants have further sought to deny the Plaintiff process by closing all active violations against the 4th Defendant despite extensive probable cause against the 4th

CIVIL ACTION AMENDED COMPLAINT - 31

Defendant. Plaintiff alleges that this intentional refusal to prosecute the 4th Defendant is a direct result of this civil action filed against the office.

148. 1st , 2nd and 3rd Defendants took no measures to punish the 5th Defendant for the false information or the 4th Defendant after discovery provided supported the claims that 4th Defendant did alter public records to commit fraud against the Court and interfere with judicial process within an active state prosecution.

149. As the Plaintiff/Victim whose rights were grossly violated by state prosecutors the Plaintiff has no recourse other then civil action. The Plaintiff has exhausted all administrative remedies to include ethics, grievance, the AOC and the DJC. All parties are powerless to help as the victim has no outlet to being wronged by prosecutors only a criminal defendant.

150. The Plaintiff seeks damages to include compensatory and punitive for the emotional and financial damages he has suffered and request that they be determined at trial. The Plaintiff seeks any injunctive relief provided by the court that would compel the 1st, 2nd and 3rd Defendants to provide the Plaintiff protections and processes denied him as the victim of a state final restraining order which names the Plaintiff as the protected party. The Plaintiff also seeks disciplinary actions against the 12th Defendant for failing in the responsibilities of a Judge and discriminating against the Plaintiff based on falsified information submitted.

**COUNT III. 42 U.S.C. § 1983: PROSECUTOR MISCONDUCT; VIOLATION BRADY V MARYLAND**

151. The Plaintiff alleges prosecutor misconduct against the 2nd Defendant Jenna Ventola, and 3rd Defendant known only as "John Doe", who are both prosecutors within the Essex County Prosecutors Office.  Overall, the legal framework in New Jersey mandates that prosecutors play an active role in protecting and advocating for the rights of crime victims throughout the criminal justice process State v. Means, 191 N.J. 610, State v. Tedesco, 214 N.J. 177, § 2A:12-14. Advance notice to prosecutor; notice to victims; "prosecutor" defined.

CIVIL ACTION AMENDED COMPLAINT - 32

152. Prosecutors in New Jersey are responsible for protecting the rights of victims in prosecutions they oversee. The New Jersey Attorney General issues standards for law enforcement agencies to follow in order to protect the rights of crime victims. State v. Means, 191 N.J. 610.

153. The Crime Victim's Bill of Rights, codified in N.J.S.A. §§ 52:4B-34 to -38, grants crime victims several rights, including the right to be treated with dignity and compassion, to be informed about the criminal justice process, to be advised of case progress and final disposition, and to make an in-person statement to the sentencing court concerning the impact of the crime State v. Means, 191 N.J. 610, State v. Tedesco, 214 N.J. 177.

154. New Jersey Legislature directs the Attorney General to promulgate standards to ensure that the rights of crime victims are enforced, and expressly instructs that prosecutors must assist victims in submitting a written impact statement and securing an explanation of plea agreements State v. Means, 191 N.J. 610.

155. Prosecutors are also required to notify victims in advance of scheduled proceedings and to consider the views of victims before reaching final decisions on plea agreements § 2A:12-14. Advance notice to prosecutor; notice to victims; "prosecutor" defined.

156. N.J. Court Rules, RPC 3. 4, explicitly prohibits lawyers from unlawfully obstructing another party's access to evidence or unlawfully concealing a document or other material having potential evidentiary value N.J. Court Rules, RPC 3.4, Fairness to opposing party and counsel. This rule further supports the notion that withholding inculpatory evidence for personal reasons would be a violation of professional conduct rules.

157. N.J. Stat. § 2C:29-3 criminalizes actions that hinder the prosecution of another, including the suppression or concealment of evidence § 2C:29-3. Hindering apprehension or prosecution. This statute provides a legal basis for prosecuting individuals who engage in such conduct, thereby reinforcing the prohibition against withholding evidence for personal reasons

158. The Plaintiff alleges that 2nd Defendant Jenna Ventola, did intentionally withhold inculpatory evidence in the state prosecution of the Plaintiffs offender 4th Defendant Francyna Evins, which violated the plaintiff's rights.

159. 2nd Defendant Jenna Ventola intentionally allowed false evidence to include both documents and testimony from biased defense witnesses whom the Plaintiff had a protective order against for harassment and false statements to law enforcement.

160. The 2nd Defendant, in retaliation for complaints to the prosecutor's office, grievances to the ethics committee and statements regarding intentions of civil action to be taken against the 2nd Defendant by the Plaintiff, did manipulate false discovery provided by the 5th Defendant Cynthia Hardaway to obtain an order from the Superior Court of New Jersey, Chancery Division which barred the Plaintiff from the criminal trial of the 4th Defendant, and further attempts to violate the Plaintiffs First Amendment protections of the Right to Freedom of Speech.

161. To establish a Brady violation, the Plaintiff must demonstrate three elements: (1) the evidence at issue was favorable to or against the accused, either as exculpatory, inculpatory or impeachment evidence; (2) the State suppressed the evidence, either purposely or inadvertently; and (3) the evidence was material to the defendant's case, either convicting or exonerating the 6th defendant Francyna Evins. The Plaintiff contends that all three elements are met in this case. The Evidence withheld by the 2nd Defendant was both material and favorable to establishing the Plaintiffs claims against 4th Defendant, Francyna Evins.

162. The 2nd Defendant possessed crucial impeachment testimony against the defense witnesses but withheld it to intentionally sabotage a state prosecution. Discovery will support this, and witness testimony to include the affidavit of Jarmerl Ferrell, will verify that the 2nd Defendant was vindictive and malicious, informing Mr. Ferrell during an interview that she would "not help the Plaintiff if he continued to file reports against her" which occurred two (1) day before the start of the Trial of State of New Jersey v Francyna Evins.

163. 4th Defendant Francyna Evins had engaged in additional criminal acts consistently harassing, stalking and threatening the plaintiff for more than a year. After the granting of the Restraining order against the 4th Defendant, the harassment increased to include fraudulent vexatious litigation, cyber harassment and stalking. Many of the acts being documented in

CIVIL ACTION AMENDED COMPLAINT - 34

police reports and supported by discovery from the 4th Defendants own personal social media accounts.

164. Despite the additional harassment, 2nd Defendant sought no additional charges against the 4th Defendant even falsely informing the Plaintiff that the 4th Defendants conduct from the State of New York was "inadmissible" within the State of New Jersey.

165. Case Law provides that acts of Domestic Violence are admissible during the prosecution to establish the history of the Domestic Violence situation in its totality. it.

166. As it relates to Brady v Maryland and the withholding of evidence, the standard of materiality is whether there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Discovery supporting acts of additional harassment and criminal conduct would have had an impact within the prosecution of the 4th Defendant as they would have supported the intentions and criminal conduct of the 4th Defendant.

167. The Plaintiff believes that justice requires a thorough examination of these critical allegations to ensure a fair and just resolution of this act. The Plaintiff wishes to highlight several key factors withheld from the trial court that was maliciously done and affected the trial court's decision:

  I.  More than fourteen (14) additional police reports detailing additional acts of intimidation and harassment by the 4th defendant, Francyna Evins. These police reports were from Essex County, the Borough of Carteret New Jersey and Staten Island, New York and detailed more than one (1) year of additional criminal acts of harassment, public records fraud, stalking, intimidation, false reporting, false swearing and more committed by the Francyna Evins.

  II. Discovery audio and text messages submitted to the 2nd Defendant Jenna Ventola that would have impeached several of the witnesses used by the 5th defendant defense counsel Cynthia Hardaway. One of these audio recordings includes the 4th Defendant incriminating herself on audio which could have affected the decision of the trial court had it been provided.

CIVIL ACTION AMENDED COMPLAINT - 35

III.   Discovery regarding the 4th Defendant who falsified public records and then submitted this false information through defense counsel who is the 5th Defendant to the following judicial parties: Essex County Office, chambers of the Trial Judge Chandra Coleman, Essex County Sheriff's Office and Special Remand Court. This false information alleged that the Plaintiff was mentally ill, receiving SSI benefits and had physically threatened the 2nd defendant Jenna Ventola. This was done when emails were sent to 2nd Defendant with pictures of a "YouTube" channel created by the 4th Defendant which falsely represented the Plaintiff. The content created had been edited with malicious intent by the 4th Defendant to manipulate the above parties against the Plaintiff in favor of the 4th Defendant. The 4th Defendant used AI editing software to create a video which falsely threatened the 2nd Defendant Jenna Ventola and further made it appear as though it was said by the Plaintiff by editing and merging separate parts of a video together into one. 2nd Defendant Jenna Ventola and Essex County Prosecutor investigators sought criminal charges against the Plaintiff, as was stated on the record by the 3rd Defendant during a separate proceeding but were unable to charge the Plaintiff after it was discovered the "YouTube" channel was not controlled or created by the Plaintiff.

IV.   Defense witnesses had a protection order against them naming the Plaintiff as a protected party. The defense witnesses had been stalking the Plaintiff with the 4th Defendant and were maliciously pursuing the Plaintiff for vengeance which had been confessed in audio by the 4th Defendant.

168. Under the Brady rule, the prosecution is required to disclose evidence that is favorable to the defendant and/or material to guilt or punishment. This includes exculpatory evidence, inculpatory evidence and impeachment evidence against a defendant.

169. The duty to disclose such evidence is not dependent on whether the defense has requested it. The prosecution must disclose this evidence regardless of whether the suppression was

CIVIL ACTION AMENDED COMPLAINT - 36

intentional or inadvertent. The evidence is considered material if there is a reasonable probability that its disclosure would have altered the outcome of the trial <u>People v. Lewis, 240 Cal. App. 4th 257, In re Moore, 615 S.W.3d 162, Ex parte Kimes, 872 S.W.2d 700</u>.

170. The motive of the prosecutor in withholding exculpatory or inculpatory evidence is immaterial. The key factor is whether the evidence is favorable to the defense and/or material to the outcome of the trial <u>Homick v. State, 112 Nev. 304, Wallace v. State, 88 Nev. 549</u>. The intentional withholding of such evidence by a prosecutor can lead to severe consequences, including the possibility of a mistrial, the imperilment of any conviction on appeal, and potential internal investigations and sanctions for ethical violations <u>Shelton v. United States, 26 A.3d 216</u>.

171. Courts may disqualify a prosecuting attorney or the entire prosecuting attorney's office if there is evidence of bad faith and a pattern of violations <u>Kidd v. City of Chicagp, 2003 U.S. Dist</u>.

172. When prosecutors withhold inculpatory evidence against a defendant, it violates the defendant's due process rights under the Fourteenth Amendment, as established in <u>Brady v. Maryland State v. Edgington, 223 Kan. 413, State v. Stevens, 285 Kan. 307, United States v. Agurs, 427 U.S. 97.</u> When prosecutors withhold inculpatory evidence in favor of retaliation against a victim they may not like, it denies that victim the right to justice as is the purpose of the trail system. This is what was done by the 2nd Jenna Ventola who intentionally and maliciously withheld over twelve (12) criminal complaints citing harassment and various other criminal offenses committed by the 4th defendant.

173. After the first day of the trial of the 4th Defendant, 2nd Defendant Jenna Ventola was replaced by 3rd Defendant who is only known to the Plaintiff as "John Doe" for purposes of this action.

174. 3rd Defendant John Doe, in accordance with the laws of New Jersey and the rights of Crime Victims and Witnesses, was under mandate to contact the Plaintiff regarding the prosecution of the 4th Defendant.

175. 3rd Defendant did not contact the Plaintiff either through intentional negligence or malicious directive from superiors. This failure to include the Plaintiff who was the victim did result in

falsified discovery and testimony being introduced which the 3rd Defendant made no

responsible effort to refute or substantiate intentionally intending for the prosecution of the 4th

Defendant to be corrupted by perjured testimony and falsified defense evidence.

176. As a direct result of the 3rd Defendants intentional actions which violated the rights of the

Plaintiff, the Plaintiff due process rights were violated and the 4h Defendant was acquitted by

use of perjured testimony and falsified discovery which directly violates the judicial integrity

mean to be upheld by the Office of the Prosecutor and the Court.

177. The office of the 1st Defendant did intentionally neglect to inform the Plaintiff of the change

in prosecutors due to the order obtained by the 2nd Defendant, who used the falsified

information submitted by the 5th Defendant, to obtain a restraining order against the Plaintiff

for threats the Plaintiff never made to the 2nd Defendant. These threats where created by the

4th Defendant, who fabricated the Plaintiff content using editing software to create bias

against the Plaintiff.

178. The restraining order obtained by the 2nd Defendant barred the Plaintiff from the workplace of

the 2nd Defendant, the workplace being the trial court in the eyes of the Plaintiff, who was

never informed by the 1st Defendant, the Essex County Prosecutors Office, or the 3rd

Defendant, "John Doe" prosecutor, that the 2nd Defendant had been replaced and therefore the

Plaintiff was not prohibited from the trial courtroom where the Plaintiff believed the 2nd

Defendant was still located as the prosecutor.

179. This was done intentionally, so that the Plaintiff would not be present to object or attempt to

refute the false testimony and discovery of the defense.

180. The violation of the judicial process by prosecutors who intentionally sabotage prosecutions

for retaliatory personal agendas deny victims the rights intended by State and Federal law.

The withholding of evidence which impeaches defense witnesses is also such a violation; the

denial of a victim's due process and protective rights is another such violation. Plaintiff seeks

all appropriate relief allowed under 42 U.S.C. § 1983, including compensatory damages,

punitive damages and injunctive relief against the defendants and their superiors for the

CIVIL ACTION AMENDED COMPLAINT - 38

violation of the rights granted him by the Constitution, Federal Government, State Constitution and State of New Jersey Statues.

## COUNT IV. CONSPIRACY 42 U.S.C § 1985 (2) OBSTRUCTING JUSTICE; INTIMIDATING PARTY, WITNESS

181. On or about March 26, 2024, Defendants 1st Essex County Prosecutors Office, Jenna Ventola 2nd Defendant, 5th Defendant Cynthia Hardaway, 3rd Defendant "John Doe", 4th Defendant Francyna Evins did conspire to deprive Plaintiff of his civil rights by committing fraud upon the court to influence the trial of State v Francyna Evins.

182. 5th Defendant Cynthia Hardaway, defense attorney of the 4th Defendant Francyna Evins, did provide false information regarding the victim/Plaintiff, information of false threats made to then acting prosecutor Jenna Ventola, and information regarding the mental health of the plaintiff.

183. This information submitted by 5th Defendant was investigated and later found to be false by Essex County Prosecutor Investigators as per the 2nd Defendant herself during the VSAPA trial. Because it was determined to have not been controlled or created by the Plaintiff, no criminal charges were filed.

184. 2nd Defendant Jenna Ventola, feeling personally offended did decide to use this false information submitted to her as prosecutor to have the Plaintiff charged with cyber harassment using the NJ Victim Survivor and Protection Act.

185. The New Jersey Supreme Court in Cashen v. Spann emphasized that prosecutors and their assistants are charged with the obligation to act in due accordance with the law in the discharge of their public duties. They are presumed to act legally, but if it is proven that they acted in excess of their official duty for personal reasons, they can be held civilly liable for such acts Cashen v. Spann, 66 N.J. 541. This principle reinforces that any deviation from their official duties for personal reasons, including withholding evidence, is not permissible

186. Plaintiff never threatened nor made any attempt to contact or notify the 2nd Defendant regarding his personal feelings relating to her professionalism or ethical responsibilities The Plaintiff

CIVIL ACTION AMENDED COMPLAINT - 39

1        never attempted to send communications electronically or through 3rd party information to

2        inform the 2nd Defendant of any comments made publicly which is a major component of

3        harassment: "Attempting to harass or annoy".

4   187. 2nd Defendant used connections to Judge to obtain cyber harassment order when burden of

5        proof not met.

6   188. The order the 2nd Defendant was granted as a complete stay away listing work, home and all

7        places listed. Plaintiff ordered to stay away from the prosecutor's office at 50 W Market Street,

8        Newark New Jersey which is the same address as the court

9   189. 1st Defendant nor 3rd Defendant made any attempt to contact the victim/Plaintiff and update the

10        plaintiff of the active prosecution that the prosecutor had been changed to oversee. The Rights

11        of Crime Victims and Witnesses act states that prosecutors must keep victims informed at all

12        stages within the judicial process, the change of the prosecutor is something the victim should

13        have been notified of.

14   190. The Plaintiff alleges the defendants did conspire to obtain the restraining order against the

15        plaintiff so that an order was present to deter his coming to the trial of State v Francyna Evins.

16        1st and 3rd Defendants actively chose not to inform the plaintiff that 2nd Defendant Jenna

17        Ventola had been replaced and therefore she would not be present at the trial.

18   191. Having been deterred due to fear of arrest, prosecutors worked with defense counsel to weaken

19        the prosecutions own case by allowing false discovery and withholding inculpatory evidence

20        supporting the guilty of the defendant.

21   192. The Plaintiff spent over two (2) months attempting to contact 1st Defendant, and offices within

22        the organization seeking assistance and information regarding the prosecution and the other

23        violations pending within the Domestic Violence Unit. No response was ever received.

24   193. Defendants did seek through use of Fraud to intentionally deceive the court, implement plans to

25        obtain the restraining order to bar the plaintiff, and introduce this information to the court and

26        trial of the 4th Defendant.

27   194. Due to the combined efforts of Defendants 2nd, 1st, 3rd ,4th  5th  and 12th the Plaintiff was denied

28        his right to be heard before the court. The Restraining order obtained against the Plaintiff; lack

of information provided to the Plaintiff regarding the replacement of the 2nd defendant did create an impression of arrest should the plaintiff attempt to attend the trial of Francyna Evins.

195. Plaintiff alleges the 1st, 2nd and 3rd Defendants did use the restraining order obtained using false information provided by 5th Defendant Cynthia Hardaway which was created by the 4th Defendant Francyna Evins, to intimidate the Plaintiff and create fear of arrest should he attempt to enter the court. The Plaintiff was only informed by the 1st Defendant no to come to the office of the 2nd Defendant, he was never informed about the 2nd Defendant being removed from the prosecution thereby allowing the Plaintiff leave to attend.

196. 1st , 2nd and 3rd Defendants never provided a secure space for the Plaintiff to wait or observe the trial directly violating the Rights of Crime Victims and Witness Act. Plaintiff, and state witnesses had been threatened by the brother of the 4th Defendant during the first day of the trial. Prosecutors, as a safety precaution for the witnesses moved all state witness to the reception area of the prosecutor's office.

197. After the 2nd Defendant obtained the order, 1st Defendant representatives contact the Plaintiff instruct him not to report to the secure area  and told him to report to the court despite the danger encountered. When questioned regarding this the Plaintiff was told there was no protection and to simply report to the courtroom. Out of fear for his safety, the Plaintiff declined.

198. Plaintiff alleges that 1st, 2nd and 3rd Defendants did conspire together to commit an action that would create a barrier to deter that Plaintiff from attending the trial of the 4th Defendant. All Defendant acting under "color of law" have procedural guidelines and statue of law they were mandated to follow yet ignored all mandates and statue of law to pursue a restraining order against the Plaintiff for accusations now proven to be false and created by the state criminal defendant against the victim.

199. Despite solid discovery to confirm this, 1st, 2nd or 3rd Defendants have taken no action against the 4th Defendant whose fraud interfered with the judicial process creating unjust biased and discrimination against a state victim who is a protected party.

CIVIL ACTION AMENDED COMPLAINT - 41

200. The Plaintiff believes the actions of the 1st, 2nd and 3rd Defendants entitle him to damages as the conspiracy created did deprive the Plaintiff of protected rights and privileges. The Plaintiff request damages appropriate with relief pursuant to this action filed against the named defendants and any injunctive relief the court may deem appropriate that would further deter those who act under "color of law" from violating the rights of another person similar to the Plaintiff.

201. Plaintiff seeks all appropriate relief allowed under 42 U.S.C. § 1983, including compensatory damages, punitive damages and injunctive relief against the defendants and their superiors for the violation of the rights granted him by the Constitution, Federal Government, State Constitution and State of New Jersey Statues.

## COUNT V. CONSPIRACY 42 U.S.C § 1985 (3) DEPRIVING PERSONS OF RIGHTS OR PRIVILAGES

202. To state a claim under this clause, a plaintiff must allege that there was some racial or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions

   Mango v. City of Columbus, 2023 U.S. Dist. LEXIS 102323

203. The Plaintiff incorporates all of count IV into count V and alleges that Defendants did violate his rights based on his gender and status as a male victim of domestic violence and that of an African American male.

204. The Plaintiff alleges that 1st , 2nd and 3rd Defendants actively conspired together in a plan that would deny the Plaintiff the right to be heard or access to the proceeding of the 4th Defendant.

205. Discovery will support the Supervisors within the office of the 1st Defendant were involved in the conspiracy to deprive the Plaintiff of his rights.

206. Male victims of domestic violence face constant ridicule and prejudice when dealing with law enforcement. The Plaintiff asserts his belief that gender biased played significant roles in the violation of his rights committed by the defendants.

CIVIL ACTION AMENDED COMPLAINT - 42

207. Prosecutors to diminish the credibility of the Plaintiff conspired to create a criminal action which would turn the Plaintiff from victim to offender.

208. A conspiracy involves 2 or more parties who through there efforts seek a collective goal that benefits the group. To weaken the justified claims of misconduct, prosecutors conspired together in the common goal to silence the petitioner and deny him any opportunity to be heard by the trial judge regarding the fraud committed on the Court and the additional acts of harassment.

209. Plaintiff seeks all appropriate relief allowed under 42 U.S.C. § 1985, including compensatory damages, punitive damages and injunctive relief against the defendants and their superiors for the violation of the rights granted him by the Constitution, Federal Government, State Constitution and State of New Jersey Statues.

### COUNT VI. 42 U.S.C. § 1986: ACTION FOR NEGLECT TO PREVENT

210. To establish a claim under 42 USC 1986, a plaintiff must prove that the defendant had actual knowledge of the conspiracy, had the power to prevent or aid in preventing the commission of the wrongful act, neglected or refused to prevent the conspiracy, and that a wrongful act was committed as a result Brandon v. Lotter, 157 F.3d 537. The courts have consistently held that a valid claim under 42 USC 1985 is a prerequisite for a claim under 42 USC 1986 M.M.E. v. Cnty. of San Bernardino, 2023 U.S. Dist. LEXIS 230508, Shuler v. Arnott, 2022 U.S. Dist. LEXIS 200328, Libman v. United States, 2022 U.S. Dist. LEXIS 235956.

211. The Plaintiff brings this action against the 1st, 2nd and 3rd Defendants, who having personal knowledge of the innocence of the Plaintiff as it regarded threatening 2nd Defendant Jenna Ventola who was the acting prosecutor within State of New Jersey v Francyna Evins, did withhold that knowledge from the court so that a restraining order would be granted against the Plaintiff for allegations by which he was innocent of.

212. 2nd Defendant Jenna Ventola was aware of the YouTube Channel submitted by the 5th Defendant Cynthia Hardaway weeks prior to the email being sent. This is supported by discovery emails where the Plaintiff sent screenshots of the YouTube Channel to the 2nd

CIVIL ACTION AMENDED COMPLAINT - 43

Defendant seeking assistance to stop the cyber harassment and defamation of the 4th Defendant. The Plaintiff was totally ignored by the 2nd Defendant who held a responsibility to protect him.

213. 4th Defendant created a YouTube channel where over 300 videos were created by the 4th Defendant to falsely label the Plaintiff as threatening and mentally ill. On this channel, the 4th Defendant had accused the Plaintiff of rape, abuse, and all the allegations which had been previously dismissed against the Plaintiff after the trial within Essex County Superior Chancery Division. This was done by the 4th Defendant to continue the pattern of stalking, defamation and slander against the Plaintiff. The Plaintiff possessed an active final restraining order protecting him from harassment, which 300 false videos created to harass and annoy the plaintiff violated.

214. Despite the information stated, the 2nd Defendant did falsify testimony and make claims under oath that the channel mentioned was that off the Plaintiff which has now been definitely proven false.

215. 2nd Defendant despite knowledge of the truth intentionally falsified information to the court so that the Plaintiff would be barred from the courtroom and building of the trial for allegations 2nd Defendant knew were false.

216. This intentional negligence regarding the truth, and the malicious intent of the conspirators to conceal truths that would have protected the Plaintiff, did allow the 4th and 5th Defendants to manipulate the judicial proceeding by providing false witness testimony and discovery against the Plaintiff.

217. The false testimony and discovery provided was responsible for the acquittal of the 4th Defendant. This acquittal denied the Plaintiff the justice of the courts as the Plaintiff has no avenue to appeal as the victim.

218. 2nd Defendant Jenna Ventola had personal knowledge which if provided would have established the Plaintiff innocence and stopped the judicial fraud committed by the 4th and 5th Defendants.

CIVIL ACTION AMENDED COMPLAINT - 44

219. 2nd Defendant sought personal revenge against the Plaintiff for being called "phat" during a social media podcast where the 2nd Defendant was not named when the insult was stated. 2nd Defendant knew the Plaintiff was talking about her due to her misconduct so used her position as a prosecutor to criminalize the free speech of the Plaintiff hoping to further violate his rights by having him barred from the trial of his offender.

220. Had 2nd Defendant revealed the knowledge she possessed, the actions barring the Plaintiff from a trial where he was the victim, and the introduction of fraudulent discovery would and could have been prevented.

221. The Plaintiff alleges that due to feeling of personal dislike and vengeance 2nd Defendant did conspire with 1st, 3rd, 4th and 5th Defendants to deprive him of his rights as granted by the laws of the state of New Jersey.

222. Plaintiff seeks all appropriate relief allowed under 42 U.S.C. § 1986, including compensatory damages, punitive damages and injunctive relief against the defendants and their superiors for the violation of the rights granted him by the Constitution, Federal Government, State Constitution and State of New Jersey Statues

## COUNT VII. 42 U.S.C. § 1983: VIOLATIONS OF FIRST AMENDMENT RIGHTS FREEDOM OF SPEECH

223. The Plaintiff brings this action against the 2nd Defendant Jenna Ventola seeking damages for violations to his First Amendment rights

224. To establish a claim alleging a violation of one's first amendment rights, the plaintiff must establish that they engaged in protected conduct, faced adverse action as a result, and that there was a causal link between the conduct and the adverse action, while also proving the individual liability of each defendant involved Dodds v. Richardson, 614 F.3d 1185, Tangreti v. Bachmann, 983 F.3d 609, Elliot v. Pa. Interscholastic Ath. Ass'n, 486 F. Supp. 3d 838.

225. To prove a violation of the First Amendment in a § 1983 claim, a plaintiff must establish several key components. First, the plaintiff must demonstrate that they were engaged in constitutionally protected conduct. This means the plaintiff's actions or speech must be

CIVIL ACTION AMENDED COMPLAINT - 45

protected under the First Amendment Elliot v. Pa. Interscholastic Ath. Ass'n, 486 F. Supp. 3d 838, Neveau v. City of Fresno, 392 F. Supp. 2d 1159, Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267.

226. Second, the plaintiff must show that the defendant took an adverse action against them. An adverse action is one that would deter a person of ordinary firmness from continuing to engage in the protected conduct Elliot v. Pa. Interscholastic Ath. Ass'n, 486 F. Supp. 3d 838, Neveau v. City of Fresno, 392 F. Supp. 2d 1159, Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267.

227. Third, there must be a causal connection between the protected conduct and the adverse action. The plaintiff must prove that the adverse action was motivated, at least in part, by the plaintiff's protected conduct Elliot v. Pa. Interscholastic Ath. Ass'n, 486 F. Supp. 3d 838, Neveau v. City of Fresno, 392 F. Supp. 2d 1159, Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267.

228. When suing government officials, the plaintiff must plead and prove that each government-official defendant, through their own individual actions, violated the Constitution. This means that vicarious liability is inapplicable, and the plaintiff must show that the official's own conduct and state of mind led to the constitutional violation Dodds v. Richardson, 614 F.3d 1185, Tangreti v. Bachmann, 983 F.3d 609.

229. Plaintiff incorporates all above related facts that regard the 2nd Defendants petitioning and use of a restraining order which was granted by use of fraudulent information provided to the 2nd Defendant by the 5th Defendant.

230. In New Jersey, when a plaintiff seeks a restraining order for cyber harassment against a defendant, the criteria that must be met are outlined in N.J.S.A. 2C:33-4(a) and related case law. The plaintiff must demonstrate that the defendant made or caused to be made a communication with the purpose to harass another person. The communication must be in a manner likely to cause annoyance or alarm, such as anonymously, at extremely inconvenient hours, or using offensively coarse language S.B.B. v. L.B.B., 476 N.J. Super. 575, § 2C:33-4.1. Crime of cyber-harassment.

CIVIL ACTION AMENDED COMPLAINT - 46

231. The intent to harass is a critical element. The defendant must have acted with the specific purpose to harass the victim. This intent can be inferred from the evidence presented and from common sense and experience D.M.R. v. M.K.G., 467 N.J. Super. 308. The court may consider repeated communications that reasonably put the person in fear for their safety or intolerably interfere with their reasonable expectation of privacy D.M.R. v. M.K.G., 467 N.J. Super. 308.

232. The communication must be directed at the plaintiff or about the plaintiff with the intent to emotionally harm or place the plaintiff in fear of physical or emotional harm § 2C:33-4.1. Crime of cyber-harassment. The court may issue a temporary protective order if it finds sufficient grounds for granting the application, including prohibiting the defendant from committing or attempting to commit any future act of cyber harassment against the alleged victim § 2C:14-15. Temporary protective order

233. The defendant's actions must be intentional and aimed at harassing the plaintiff, and the communications must be of a nature likely to cause annoyance or alarm to the plaintiff S.B.B. v. L.B.B., 476 N.J. Super. 575, § 2C:33-4.1. Crime of cyber-harassment, § 2C:14-15. Temporary protective order.

234. The Plaintiff host a weekly podcast dealing with issues of race, domestic violence and gender bias faced by minority men.

235. Around March 21, the Plaintiff hosted an episode of his podcast speaking about his experiences with the 2nd Defendant who violated the Plaintiff civil rights during the judicial process where the plaintiff was the listed victim of record.

236. Plaintiff expressed concern regarding the integrity and misconduct of the 2nd Defendant and her actions as the prosecutor against his offender who is the 4th Defendant.

237. Plaintiff asserted his intent to exercise his legal right to file complaints and grievance against the 2nd Defendant for the violations to his civil rights he could prove happen. During this episode, the Plaintiff stated that the 2nd defendant would be held responsible for her actions and be fired if he could prove the misconduct he alleged.

CIVIL ACTION AMENDED COMPLAINT - 47

238. The Plaintiff never physically threatened the 2nd Defendant, and none of his speech mentioned violence or implied the use of imminent violence towards the 2nd Defendant.

239. The Plaintiff made no attempt to contact, or through 3rd party make the 2nd defendant aware of his podcast. The 2nd defendant and Plaintiff have no connections nor are they friends on social media.

240. 2nd Defendant became aware of the views of the Plaintiff when the 5th Defendant, Cynthia Hardaway sent an email to the 2nd Defendant claiming that a YouTube channel created by the 4th Defendant Francyna Evins was in fact created by the Plaintiff which was false.

241. This YouTube channel hosted edited videos created by the 4th Defendant that misrepresented his original content and additionally used Artificial Intelligence to edit and recreate videos where the Plaintiff appeared to be threatening the 2nd Defendant.

242. By use of the falsified discovery sent to the 2nd Defendant by the 5th Defendant, the 2nd Defendant was able to obtain a temporary restraining order after alleging threats and fear of physical harm.

243. After a thorough investigation by Detectives within the Office of the 1st Defendant, it was determined that the Plaintiff did not own nor control the YouTube Channel Sent to the 2nd Defendant.

244. Despite verification from investigators within the office of the 1st Defendant, 2nd Defendant used the falsified discovery to bring allegations of Cyber Harassment against the Plaintiff.

245. The 2nd Defendant did so to violate the free speech of the Plaintiff due to fear of being discovered for acts of misconduct committed against the Plaintiff.

246. The falsified discovery used was created by the 4th Defendant for purposes of gaining leverage over the victim of a state prosecution where the 4th Defendant was the listed criminal Defendant.

247. Speech protected by the First Amendment is not protected when it falls into certain narrow categories that have been historically unprotected. These categories include fighting words, obscenity, child pornography, incitement, defamation, true threats, and speech integral to

CIVIL ACTION AMENDED COMPLAINT - 48

criminal conduct <u>State v. Higginbotham, 257 N.J. 260</u>, <u>State v. Hill, 256 N.J. 266</u>, <u>State v. B.A., 458 N.J. Super. 391.</u>

248. The New Jersey Supreme Court has noted that the state constitution provides broader protection for free speech than the federal constitution, but it still does not protect speech that falls into the aforementioned unprotected categories <u>Dublirer v. 2000 Linwood Ave. Owners, Inc., 220 N.J. 71</u>, <u>Horizon Health Center v. Felicissimo, 263 N.J. Super. 200</u>

249. The Supreme Court of New Jersey has held that persons who file grievances "may speak publicly regarding the fact that a grievance was filed, the content of that grievance, and the result of the process."  Since disciplinary officials are required by Rule 1:20-9(h) to maintain the confidentiality of the investigation process and may neither speak about the case nor release any documents, until and unless a formal complaint is issued and served, you must also keep confidential any documents you may receive during the course of the investigation of your grievance.

250. Those who file complaints are not forbidden from speaking about complaints filed although they are advised its best to keep details on a need-to-know basis. No law within the state of New Jersey forbids a grievant or litigant from speaking about disciplinary or civil acts taken against those who violated their rights.

251. In New Jersey, a grievant or litigant cannot be punished for speaking about a state official who has violated their rights, as such speech is protected under the First Amendment. The New Jersey Supreme Court has held that <u>Rule 1:20-9</u>, which previously mandated confidentiality of grievances against attorneys, violates the First Amendment because it is not narrowly tailored to advance a compelling interest. The court concluded that a grievant is not barred from divulging the fact that they filed a grievance, the content of that grievance, and the result of the process <u>R.M. v. Supreme Court of N.J., 185 N.J. 208</u>, <u>R.M. v. Supreme Court of New Jersey, 190 N.J. 1.</u>

252. Under New Jersey law, any person who interferes with the exercise or enjoyment of constitutional rights through threats, intimidation, or coercion is liable for civil penalties, and the Attorney General may bring a civil action for damages and injunctive relief on

CIVIL ACTION AMENDED COMPLAINT - 49

behalf of the injured party § 10:6-2. Actions permitted under the "New Jersey Civil Rights Act". This reinforces the protection of free speech against retaliation by state officials.

253. The New Jersey Superior Court has affirmed that citizens have the inherent and basic right to criticize the conduct of public officials, including members of the judiciary, under both the State and Federal Constitutions. This right is subject to accountability for libel or slander but does not extend to censorship of criticism of public officials In re Bozorth, 38 N.J. Super. 184.

254. The 2nd Defendant did through fraudulent means seek to obtain a restraining order that would prevent the Plaintiff from speaking about the misconduct publicly and violations to his rights publicly.

255. These actions of the 2nd Defendant did violate the rights of speech granted to the Plaintiff by the Constitution and New Jersey law. 2nd Defendant sought to criminalize the free speech of the Plaintiff to protect herself from liability.

256. The allegations of the Plaintiff have not been proven to be false. All allegations of the Plaintiff can be substantiated using discovery. Plaintiff made numerous attempts to file complaints with the office of the 1st Defendant but was denied due to internal corruption of officials within the office of the 1st Defendant.

257. Plaintiff seeks all appropriate relief allowed under 42 U.S.C. § 1983, including compensatory damages, punitive damages and injunctive relief against the defendants and their superiors for the violation of the rights granted him by the Constitution, Federal Government, State Constitution and State of New Jersey Statues


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that judgment be entered against Defendants and seeks the following relief:

a. Compensatory damages for loss of wages (backpay and front pay), lost

CIVIL ACTION AMENDED COMPLAINT - 50

1   contracts due to the cyber harassment and defamation of Francyna Evins, emotional

2   distress damages, including, but not limited to, pain, suffering, stress, humiliation, and

3   mental anguish.

4   b. Punitive damages.

5   c. Attorney fees, pre-and post-judgment interest, and cost of suit;

6   d. Sanctions against attorney Cynthia Hardaway; monetary damages for defamation

7   e. An order directing the office of the 1st defendant to communicate and provide the

8   plaintiff with those rights detailed within N.J.S.A 52:4B-36;

9   f. An order directing the office of the 1st defendant to comply with the requirements set

10   for within the NJPDVA and federal domestic violence law regarding the treatment of

11   victims of Domestic Violence.

12   g. Such other relief as the Court may deem just and appropriate under the

13   circumstances.

14   h. Damages pursuant to 42 U.S.C 1983 for the extended civil rights violations of the

15   defendants named herein.

16   i. Damages pursuant to Monell v. Department of Social Services, for the actions of all

17   defendants who acted "under color of law" using the officers and official positions to violate the

18   civil rights of the plaintiff

19   J. Damages pursuant to New Jersey Civil Rights act for those violations against all

20   named defendants herein who acting "under color of law" did violate the civil rights of the

21   plaintiff and discriminate against the plaintiff by refusing to enforce the Superior Court of New

22   Jerseys mandatory restraining order against the 6th defendant.

23   k. Any other relief this honorable court may see fit to provide.

24

25   Dated this 28 of September, 2024.

26   DocuSigned by:

27   _____
     A301993D39A0488...
     PRO SE

28

CIVIL ACTION AMENDED COMPLAINT - 51

**Certification**

1.1 I, Clayton Howard, hereby certify that the factual allegations contained in this civil action complaint are true and accurate to the best of my knowledge and belief.

1.2 I certify that this complaint is filed in good faith and not for any improper purpose.

1.3 I certify that this complaint complies with the Federal Rules of Civil Procedure, the Local Rules of this Court, and the ethical obligations applicable to federal litigation.

2. Parties

2.1 The plaintiff in this action is Clayton Howard, a resident of Middlesex County, New Jersey who is of legal age.

2.2 The defendant(s) in this action are:

1. State of New Jersey

   2. Essex County Prosecutors Office and its Officials

   3. Jenna Ventola Official of the 2nd defendant

   4. "John Doe" Official of the 3rd defendant

   5. Francyna Evins defendant of FV-07-3579-22 and 4th defendant

   6. Cythnia Hardaway. 5th defendant

   7. Carteret Police Department 6th defendant

   8. Office Johnathan Defelice 7th defendant

   9. Officer Torobino 8th defendant

   10. Sgt Jason Hanes 9th defendant

   11. Patrick Wallmack 10th defendant

   12. Judge Allen Cumba 11th defendant

   13. Judge Chandra Cole 12th defendant

CIVIL ACTION AMENDED COMPLAINT - 52

### 3. Jurisdiction and Venue

3.1 This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 as it arises under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 and seeks redress for the deprivation of the plaintiff's civil rights under color of state law.

3.2 Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events giving rise to the plaintiff's claims occurred in this district.

### 4. Factual Allegations:

1. The plaintiff has been the subject of ongoing harassment and criminal actions committed by defendant Francyna Evins beginning in May 2022.

2. The Newark Police Department were notified of violations to the restraining order over a two (2) year period and intentionally refused to enforce the protections ordered in favor of the plaintiff due to discrimination and gender bias

3. The Essex County Sheriff's Office received fictitious complaints filed by Francyna Evins which were investigated and determined false by its detectives yet despite an active final restraining order refused to enforce the protection further discriminating and inflicting discrimination and gender bias against the plaintiff

4. The Essex County Prosecutors Office is a government agency responsible for maintaining law and order and the prosecution of criminals to include those that violate restraining orders in accordance with Domestic Violence law. Failure of the Essex County Prosecutors office to protect the plaintiff who was a victim within an active prosecution and the protected party within final restraining order FV-07-3579-22 where committed between August 2022 throughout July 2024 (Current) The Office of the Essex County Prosecutors  refuse to provide the plaintiff with any protections as the listed and/or protected victim further supporting the plaintiffs' claims of gender bias and discrimination by defendants named herein. The Essex County Prosecutors office withheld key discovery that would have affected the outcome of the trial in favor of the plaintiff who was a victim, robbing the plaintiff of justice against his accused violating Brady v Maryland and the civil rights of the plaintiff.

5. Francyna Evins is the ex-partner of the plaintiff who for almost two (2) years intentionally violated the stipulated protections of final restraining order FV-07-3579-22 and engaged in a continuous campaign of

CIVIL ACTION AMENDED COMPLAINT - 53

harassment, stalking, cyber bullying and intimidation against the plaintiff using false and vexatious litigation to abuse his emotional health and his financial life. During the course of this continued harassment Francyna Evins further violated more than (10) New Jersey Code of Criminal Conduct statues in order to achieve vengeance and in an attempt to menace the life of the plaintiff. Francyna Evins altered public records that she used to destroy the plaintiffs' reputation online falsely diagnosing the plaintiff as "Schizophrenic" creating over forty (40) videos and further filed fictious court documents to deceive the court into removing the protections of the restraining order in her favor.

6.  Cynthia Hardaway is an attorney that violated numerous American Bar Association Rules of Professional Conduct when she knowingly submitted falsified information on behalf of her client to prosecutors and the trial judge of State of New Jersey V Francyna Evins in an attempt to again unjust favor and leverage for her client Francyna Evins who was being criminally prosecuted for crimes against the plaintiff. Despite being advised and provided proof that the information submitted to the court and office of the prosecutor had been falsified, Cynthia Hardaway refused to retract the false narrative via email when retraction was requested. Cynthia Hardway further falsified court dates for actions she was not party too, to obtain adjournments in favor of her client to intentionally delay and hinder the justice process further harassing the plaintiff.

7.  Carteret Police Department violated the plaintiff rights by refusing to enforce state restraining order FV-07-3579-22 and further altering plaintiff statements made to deny the plaintiff the rights granted in accordance with stated and federal domestic violence law. Officer Jonathan Defelice altered several plaintiff statements which can be substantiate via the officer body camera footage were certified court records were produced to the officers, yet his written report does not reflect the correct information provided to him and recorded on the body camera footage. Officer Torbino falsely informed the plaintiff that a State Final Restraining order was not enforceable in Carteret and denied the plaintiff the opportunity to document his complaints. The plaintiff believes the cause of these civil rights violations are gender bias and discrimination both racially motivated and sexually biased.

8.  Middlesex County Municipal Prosecutors Office maliciously prosecuted the plaintiff for eighteen (18) months for allegations of false reporting filed by 6th defendant Francyna Evins seven (7) days after the Essex Family restraining order was granted on December 1, 2022. Despite being provided with the certified

CIVIL ACTION AMENDED COMPLAINT - 54

trial court transcript from Essex County which verified all actions were adjudicated within Essex County during the trial of Francyna Evins Prosecutor Patrick Wallmack maliciously prosecuted the plaintiff and refused to acknowledge the plaintiff as the state's victim of an active domestic violence restraining order for harassment held against Francyna Evins. Prosecutor Wallmack proceeded to assist the 6th defendant who attempted to build a new harassment case against the plaintiff in Middlesex County due to her failure to obtain an order within Essex County after losing the trial. The plaintiff believes the cause of these civil rights violations are gender bias and discrimination both racially motivated and sexually biased.

9.  Borough of Carteret Municipal Court refused to grant the plaintiff the protect rights awarded by the Superior Court of New Jersey. Judge Allen Cumba denied ever contempt complaint against Francyna Evins despite reports from Detective Megan Magalski who stood present and witness the third-party contact of producers from the television show "Divorce Court" where they plaintiff was told by the producer the 6th defendant had given the show his number and asked, he be contacted to participate in the show for a sum of $300. The plaintiff was also asked to drop the restraining order while this took place all stated before Detective Megan Magalski of the Carteret PD. Judge Allen Cumba who is bias towards minority male victims refused his responsibly to protect the plaintiff who was being harassed. The plaintiff believes the cause of these civil rights violations are gender bias and discrimination both racially motivated and sexually biased.

5. Claims for Relief

a. Compensatory damages for loss of wages (backpay and front pay), lost contracts due to the cyber harassment and defamation of Francyna Evins, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish.

b. Punitive damages.

c. Attorney fees, pre-and post-judgment interest, and cost of suit;

d. Sanctions against attorney Cynthia Hardaway; monetary damages for defamation

e. An order directing the office of the 2nd defendant to communicate and provide the plaintiff with those rights detailed within N.J.S.A 52:4B-36;

CIVIL ACTION AMENDED COMPLAINT - 55

1            d. An order directing the office of the 2nd defendant to comply with the requirements

2            set for within the NJPDVA and federal domestic violence law regarding the treatment

3            of victims of Domestic Violence.

4            e. Damages pursuant to Monell v. Department of Social Services, for the actions of all

5            defendants who acted "under color of law" using the officers and official positions to

6            violate the civil rights of the plaintiff

7            f. Damages pursuant to New Jersey Civil Rights act for those violations against all

8            named defendants herein who acting "under color of law" did violate the civil rights

9            of the plaintiff and discriminate against the plaintiff by refusing to enforce the

10           Superior Court of New Jerseys mandatory restraining order against the 6th defendant.

11           g. Such other relief as the Court may deem just and appropriate under the

12           circumstances.

13           h. Damages pursuant to 42 U.S.C 1983 for the extended civil rights violations of the

14    defendants named herein.

15        6. Verification

16           I Clayton Howard declare under penalty of perjury under the laws of the United States

17    of America that the foregoing is true and correct.

18

19        Executed on August 2, 2024.

20        DocuSigned by:

21        _____
            A301993D39A0488...

22    Pro Se

23

24

25

26

27

28

CIVIL ACTION AMENDED COMPLAINT - 56